**NOT RECOMMENDED FOR PUBLICATION**
File Name: 08a0608n.06
Filed: October 10, 2008

No. 06-4141

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Corlethea A. White, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     Merritt, Clay and Gilman, Circuit Judges.

   **MERRITT, Circuit Judge.**  Defendant, Corlethea White, appeals her sentence after a plea of guilty to violations of Access Device Fraud, 18 U.S. C. § 1029(a)(2), and Aggravated Identity Theft, 18 U.S.C. § 1028A(a)(1).[1]  Defendant was sentenced to 109 months, which included a mandatory two-year sentence for the Aggravated Identity Theft conviction consecutive to any sentence for the Access Device Fraud.  Although the facts are largely undisputed and defendant pled guilty to the two counts in the indictment, she continues on appeal to dispute her role in the scheme to steal credit card account information, claiming that she played only a minimal role.  She does not

---

[1]By motion submitted after oral argument and submission of the case, defendant requested to withdraw the issue in her appeal challenging the factual bases supporting her guilty plea.  We reserved ruling on the motion until the opinion was issued, and we now grant defendant's motion to withdraw issue III-1.

challenge the authority of the court below to increase her sentence based on judicial findings concerning the number of victims or the amount of the loss. But defendant does challenge the district court's refusal to apply the three-level reduction for acceptance of responsibility and its calculation of the amount of loss attributed to the scheme. In addition, defendant contends that the district court either did not adequately consider the 28 U.S.C. § 3553(a) factors in sentencing or failed adequately to articulate its reasoning and, finally, she contends that her constitutional rights were violated under the Double Jeopardy Clause when the same facts were used to punish her for both crimes.

After careful examination of the evidence offered of defendant's guilt in the Presentence Report and at the sentencing hearing, and based on her criminal history category of V and the fact that the district court found her testimony at the sentencing hearing "wholly incredible," we affirm the sentence imposed.

## I. Facts

Faith Cook, a codefendant, was employed by Intelirisk, a company that did collections work for the credit card company Capital One. She met defendant in October 2004. Cook began relaying account information from Capital One customers to defendant via cell phone. Cook transferred account information to defendant from between 50 and 100 Capital One accounts. Defendant kept the information in a notebook. The information included names, corresponding account numbers, mothers' maiden names, social security numbers, telephone numbers, addresses and card expiration dates. Cook testified that defendant was the only person to whom she gave account information, and Cook also testified that she did not keep any of the information herself. Cook testified that she had

expected to split the proceeds from goods purchased with the stolen account information, but she never received any money from defendant and only received about $500 worth of clothing.

Cook continued to convey information to defendant until July 2005, when Cook was fired from her job at Intelirisk after it was discovered that a number of Capital One accounts had been compromised by Cook. Defendant picked up Cook from work the day Cook was fired and claims that when she arrived to pick up Cook, Cook put a large plastic bag containing personal papers from her office into the trunk of defendant's car and left it there. Cook, on the other hand, testified that she was escorted from the building by security and was not allowed to bring anything from her office except her purse. Cook pled guilty to identity theft and was awaiting sentencing at the time of briefing of this appeal.

A third person involved in the scheme, LaShanta Hartman, met defendant when they were both incarcerated in the Franklin County [Ohio] Jail in 1999. Hartman testified that she received from defendant five to eight names with corresponding addresses, account numbers, mothers' maiden names, social security numbers, passwords, card expiration dates, and phone numbers. Hartman used these to make fraudulent purchases from various stores. Hartman testified that she would then sell the items. Hartman testified that she never met or talked to Faith Cook and that she did not receive any credit card information from her. Like Cook, Hartman pled guilty to identity theft.

Also testifying at the sentencing hearing was Mekel Henderson, a realtor who specialized in government-assisted housing. She was introduced to defendant by a fellow realtor who told Henderson that defendant could get discounted appliances at Lowe's stores to put in the houses she

was selling. Defendant came to Henderson's office and picked up money for the purchase of appliances. Defendant later called Henderson to arrange for the delivery of appliances from Lowe's purchased by defendant with stolen Capital One account information. Working with Capital One, agents investigating the stolen accounts made a controlled delivery of appliances from Lowe's to Henderson's residence in October 2005.

In November 2005, defendant's residence (which was a home owned by defendant's grandmother) was searched. In a locked closet the agents found two shopping bags containing various papers and documents, including Capital One identification documents pertaining to accounts furnished by Faith Cook when she worked at Intelirisk. Information removed from the two shopping bags matched 49 of the 57 victims identified by Capital One as having their account information stolen by Cook. Mail addressed to defendant was also in the bags. The search also turned up a letter addressed to a Nate Smith, one of the compromised Capital One account holders, at 545 Kimball Place, Columbus, Ohio – the address of defendant's residence. Nate Smith's name, Capital One account number, date of birth, social security number, mother's maiden name, address and telephone number were found among the papers in the shopping bags. Although no fax machine was ever found in the house, agents also found a fax sent from Capital One to the phone number at defendant's residence. The phone number at defendant's residence was also linked to the fraudulent use of other Capital One accounts. Defendant testified at the hearing that she was simply storing the bags for Faith Cook and she had no idea what was in them.

William Brown met defendant in December 2005 while he was working in a Sprint cell phone store. In violation of store policy, Brown permitted defendant to open a Sprint account with

nothing other than a credit card number. In exchange for opening the account for defendant, Brown testified that defendant bought a $400 phone on the account and gave it to Brown. Brown was fired for violating store policy by opening a cell phone account for defendant using only a credit card number. The credit card number used to purchase the phone at the Sprint store was also found among the papers in the shopping bags removed from defendant's residence the month before.

Capital One's investigation of the accounts compromised by Cook revealed an actual loss of $212,361.21 to 57 individuals holding 103 separate Capital One accounts.

Defendant was charged with one count of access device fraud in violation of 18 U.S.C. § 1029(a)(2),[2] and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).[3]

---

[2]Fraud and related activity in connection with access devices

(a) Whoever--

. . .

> (2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period;

. . .

shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

18 U.S.C. § 1029(a)(1).

[3]18 U.S.C. § 1028A(1) states:

(a) Offenses.--

> (1) In general.--Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification

Defendant initially pled not guilty, but withdrew the original pleas and entered guilty pleas to both counts. *See* Transcript of Plea Agreement Hearing (Apr. 25, 2006); Plea Agreement. The district judge went over the plea agreement carefully with defendant because she seemed to dispute some of the facts in the plea agreement. No agreement was made at this time as to the amount of loss attributable to defendant, number of victims, or her role in the offense; but the indictment states that the loss is in excess of $12,000 and specifically mentions only "Victim 1." The judge explained to defendant that she would be sentenced after a Presentence Report was completed and that without that information, he could not tell her what sentence he might impose at the time of sentencing. Defendant told the judge she understood.

A Presentence Report was prepared that established an advisory guideline range for Count 1 (Access Device Fraud) based on a total offense level of 22 (Base offense level of 6, plus 12 additional levels for loss amount of $212,361.21, plus 4 additional levels because there were more than 50 victims), with a criminal history category of V. Count 2 (Aggravated Identity Theft) requires a 24-month sentence consecutive to the sentence imposed for the underlying felony (Count 1– Access Device Fraud). Defendant filed numerous objections to the Presentence Report, which the district court went over in great detail at the sentencing hearing.

After a lengthy hearing with several witnesses, including defendant, the district court sentenced defendant to 109 months in prison: 85 months on the access device fraud charge, followed

---

of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

by a mandatory 2-year sentence on the aggravated identity theft charge. The district judge stated at the hearing that he found defendant's hearing testimony "wholly incredible" and "perjurious" and credited the testimony of the other witnesses as to defendant's primary role in the scheme. Defendant appeals her sentence to this Court.

## II. Analysis

### A. The Guidelines Range

Defendant argues that the guidelines range assigned to her pursuant to the United States Sentencing Guidelines was clearly erroneous factually because it held her responsible for the crimes of others through the amount of loss calculation and the number of victims harmed by her actions. She also contests the denial of the three-point reduction for acceptance of responsibility in light of her guilty plea.

**1. Amount of Loss.** The district court attributed $212,361.21 to the defendant as the amount of loss, agreeing with the amount suggested in the Presentence Report and overruling defendant's objection.[4] Defendant argues that the indictment listed only $12,000 in losses personally attributable to her conduct and that is the only amount that can be proved as attributable specifically to her conduct. The district court reiterated that it found defendant's testimony "wholly incredible" and

---

[4]At the sentencing hearing, the probation officer noted that the Application Note to U.S.S.G. § 2B1.1 directs that the greater of the intended versus actual loss should be used, but that at the time she prepared the report she did not have the information about intended loss from Capital One. She stated that had she had that number, which was in excess of $700,000, she would have recommended that the court apply it to defendant's loss calculation instead of the $212,361.21 amount. Sentencing Tr. at 132. Had the amount of loss risen to the $700,000 number, the level would have increased by two points from 12 to 14. U.S.S.G. § 2B1.1(b)(1).

instead believed the witnesses who testified about the extent of defendant's role in the identity theft. Sen. Tr. at 131. The district court found that the amount of loss attributable to the entire scheme should be imputed to defendant. *Id.* The court then noted that case law in the Sixth Circuit allows the entire *intended*, or possible, loss to be attributed to the defendant. *United States v. Tudeme*, 457 F.3d 577, 581-82 (6th Cir. 2006) (citing U.S.S.G. § 2F1.1). But, the court stated that it "has always felt comfortable with the actual loss and uncomfortable with an intended loss calculation," despite the existence of authority for that position. *Id.* at 131-32. The court also noted that only actual loss was used in the Presentence Report and that defendant was not on notice of the larger amount; therefore, it would be "unfair" to "ambush" her with a larger loss calculation at the hearing. *Id.* at 132.

The evidence in the record demonstrates that the accounts of various Capital One customers incurred actual losses of $212,361.21 over the course of time that defendant had access to the credit card numbers. Information concerning each of these account holders was found in the shopping bags in defendant's closet during the search of her residence. It was, therefore, not clearly erroneous to attribute the entire actual loss to defendant. Defendant's argument that she compromised the accounts in the amount of only $12,000 and that Faith Cook or LaShanta Hartman must be responsible for the remaining amount was not credited by the district court. There is no evidence that Faith Cook ever used the account information to obtain goods or services. Instead, her testimony was that she received only about $500 in clothing from defendant for giving over the information. Unlike the situation with defendant, no account or other information was ever found in her possession, no goods were delivered to her address, and no phone or fax numbers used to

order goods were attributable to her. The district court found credible Cook's testimony that she simply gave the customer information to defendant in exchange for clothing and the unrealized hope that she might receive cash if goods purchased with the stolen information were sold.

As for LaShanta Hartman, she admitted to having the account information of about five to eight people, which she used to purchase items from various stores, but she testified that the information was given to her by defendant and was not from Cook. She testified that she did not know Faith Cook, and no evidence was produced to demonstrate that Hartman had access to the Capital One account information except through her relationship with defendant.

**2. Number of Victims.** As with the amount of loss, defendant claims she should be held responsible for only the one victim identified in the indictment. The record, however, shows that defendant had two shopping bags in a locked closet in her residence containing personal and account information for 57 Capital One account holders and that information from these stolen accounts was used by defendant to purchase goods and services. The district court did not err in adding four levels to her base offense level for the number of victims she impacted. U.S.S.G. § 2B1.1(b)(2)(B).

**3. Reduction for Acceptance of Responsibility**. Defendant claims that she should have received a three-level reduction in her base offense level because she pled guilty to the charges against her. Despite the guilty pleas, the district court found that defendant failed to accept responsibility for her actions as demonstrated by her "wholly incredible" testimony at the sentencing hearing. During her testimony at the sentencing hearing, defendant disputed the testimony of Cook and Hartman and repeatedly denied that she played the significant role testified to by the other two women involved in the scheme. Instead, defendant placed the blame on Cook and Hartman, claiming that they lied

about their roles in the scheme to lessen their culpability and to put most of the blame on defendant as the ringleader in order to help themselves. Defendant's testimony at the sentencing hearing was that she knew very little about the identity theft and had done only two or three transactions using stolen account information. She denied that the shopping bags in the locked closet at her residence, which were full of Capital One account information, belonged to her. She testified instead that they belonged to Cook, who denied ownership.

After the witnesses had testified, the district judge went through all of defendant's objections carefully. The district court found defendant's version of the facts "wholly incredible" and credited the testimony of Cook and Hartman as to defendant's role in the identity theft ring.[5] In addition, the district court found that the physical evidence obtained during the search of defendant's residence did not support defendant's version of the facts. Accordingly, the district court denied defendant the reduction for acceptance of responsibility.

## B. Section 3553(a) Factors

Defendant also contends on appeal that the district court erred by either failing to consider the factors under 28 U.S.C. § 3553(a) or adequately to articulate its reasoning for the sentence.

The district court is not required to recite each § 3553(a) factor, but "must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005). While defendant correctly points out that

---

[5]Defendant did not receive any additional levels for her role in the offense under U.S.S.G. § 1B1.3, nor did she receive an upward adjustment for perjury, despite hints by the district court that such an adjustment might be warranted given the extent of her denials and untruthfulness to the court in the face of the evidence.

the district court did not go through the section 3553(a) factors one-by-one, which generally is preferable, the court stated that it had "reviewed every one of the factors in Section 3553(a) . . . ." Sentencing Tr. at 148. A review of the entire sentencing hearing reveals that the district court did take the factors into consideration in sentencing defendant. In addition to stating on the record that it had considered all the factors, the court asked the defendant and other witnesses many questions and expressed its thoughts repeatedly throughout the hearing. The district court also carefully went over each of defendant's objections and explained why it sustained or overruled each objection. In undertaking this careful articulation of the reasoning for its rulings on the objections, the basis for the court's ultimate sentence is clear. A full reading of the sentencing transcript demonstrates that the court was thoughtful about imposing the sentence and did not rigidly apply the Guidelines and mindlessly ratchet up the relevant conduct in order to impose the harshest sentence possible.

We hold the sentence reasonable under the circumstances. The district court used the lower amount for the loss calculation, despite the government's request at sentencing for the court to use the higher amount of loss. In addition, the court did not impose an obstruction of justice enhancement despite the fact that LaShanta Hartman testified that when they were in prison together, defendant threatened Hartman and her family with bodily harm if Hartman testified against defendant. The government also hinted that it might ask for a perjury enhancement if the court was inclined to hear about it. The court rejected all these requests, despite the fact that the judge was clearly troubled by the defendant's apparent extensive falsehoods about this and earlier crimes in which the defendant had been involved but for which she sought to avoid responsibility at sentencing. The district court stated that it found defendant's testimony "to be not only incredible

-11-

but perjurious," Sentencing Tr. at 148, and the judge told defendant that he was tempted to do as the government requested and "deviate upwards as a result of the testimony that I heard today." *Id*. In the end, the district court did not ratchet up defendant's sentence, but, to the contrary, showed restraint in sentencing despite the fact that increases based on perjury, obstruction of justice and amount of loss were readily justifiable on the record.

## C. **Double Jeopardy**

Defendant argues that the mandatory two-year sentence she received for Count Two, Aggravated Identity Theft, which must run consecutively to the sentence for the underlying felony conviction for Count One, Access Device Fraud, violates double jeopardy principles. Defendant pled guilty to Access Device Fraud as defined in 18 U.S.C. § 1029(a)(2), which makes it unlawful to "knowingly and with intent to defraud, traffic in or use one or more unauthorized access devices [e.g., credit cards] during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period . . . ." She also pled guilty to Aggravated Identity Theft as defined in 18 U.S.C. § 1028A(a)(1), which requires the district court to impose a two-year mandatory sentence consecutive to any other sentence for any person who "during and in relation to any felony violation enumerated in subsection (c) [which includes § 1029], [also] knowingly transfers, possesses, or uses without lawful authority, a means of identification of another person [other than a credit card] . . . ." Therefore, a violation of 18 U.S.C. § 1028A occurs when a defendant, in addition to meeting the elements of Access Device Fraud under Section 1029, meets the additional element of using specific identifying information from a known person, such as a social security number or mother's maiden name.

-12-

Defendant contends that Count Two, the Aggravated Identity Theft charge, violates the Double Jeopardy Clause because both the Access Device Fraud charged in Count One and the Aggravated Identity Theft charged in Count Two require the same proof in requiring a finding of unauthorized use of an "access device," which in this case is the stolen credit card numbers. "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature – in this case Congress – intended that each violation be a separate offense." *Garrett v. United States,* 471 U.S. 773, 778 (1985). If the legislative intent can be discerned from the face of the statute or the legislative history, then double jeopardy principles are not violated. *Id.* at 779 (stating that the "*Blockburger* rule is not controlling when legislative intent is clear from the face of the statute or the legislative history"). In *Blockburger v. United States,* 284 U.S. 299 (1932), the Supreme Court explained that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof that the other does not." *Id*. at 304.

Based on a plain reading of 18 U.S.C. § 1028A, it is clear that the statute is meant to impose additional punishment on those defendants who, in addition to using an "access device" (such as a credit card number or bank card), also used specific identifying information from a known person. *United States v. Komolafe*, 246 Fed. App'x 806 (3d Cir. 2007) (consecutive sentences for violations of Sections 1028A and 1029 do not violate Double Jeopardy Clause). Furthermore, the legislative history of § 1028A makes clear "that the enhancement be imposed as a consecutive sentence and expressly prohibits a judge from ordering the sentence to run concurrently with the underlying

offense [here, § 1029(a)(2)]." H.R. Rep. 108-528, 2004 U.S.C.C.A.N. 779, 786. Accordingly, the

sentences imposed pursuant to Counts One and Two were proper.

For the foregoing reasons, we affirm the judgment and sentence of the district court.