NOT RECOMMENDED FOR PUBLICATION

File Name: 12a1222n.06

Nos. 11-5774/11-5818

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Nov 26, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| David Lyles and Sylvester Knight, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

Before:     MERRITT, McKEAGUE, and STRANCH, Circuit Judges

**MERRITT, Circuit Judge**.   This identity theft case arises from a scheme in which participants obtained stolen credit card numbers, encoded retailers' gift cards with those numbers, and then used the fraudulent gift cards to purchase legitimate gift cards and merchandise. Defendants David Lyles and Sylvester Knight appeal their sentences after each pleaded guilty to one count of Conspiracy to Commit Access Device Fraud, 18 U.S.C. § 371; one count of Access Device Fraud under 18 U.S.C. § 1029(a)(2); one count of Access Device Fraud under 18 U.S.C. § 1029(a)(3); and one count of Aggravated Identity Theft, 18 U.S.C. § 1028A.  The district court sentenced Lyles to 164 months' imprisonment and Knight to 124 months' imprisonment.  In reaching its judgment, the district court included multiple sentence enhancements under the United

States Sentencing Guidelines, several of which are relevant here.[1] First, it increased each defendant's sentence by fourteen levels for causing a loss of more than $400,000 but less than $1 million. U.S.S.G. § 2B1.1(b)(1)(H). The actual loss was much less than $400,000, but U.S.S.G. § 2B1.1 cmt. n.3(F)(i) requires that the loss "per access device" "shall not be less than $500." Second, the district court imposed a four-level increase because the offense involved over fifty victims. U.S.S.G. § 2B1.1(b)(2)(B). Third, it imposed a two-level increase because the defendants relocated to another jurisdiction to evade law enforcement and because the offense otherwise involved sophisticated means. U.S.S.G. §§ 2B1.1(b)(9)(A), (C). Finally, it added another two levels because the crime involved the use of device-making equipment to create fraudulent gift cards. U.S.S.G. § 2B1.1(b)(10)(A)(i).

On appeal, each defendant challenges the district court's calculation of these enhancements. Lyles argues that the district court should have determined the amount of loss by using the actual loss caused through use of 192 stolen credit card numbers to make purchases. Knight also argues that the district court's loss calculation was erroneous, but under the theory that the commentary for U.S.S.G. § 2B1.6 precludes sentence enhancements when a defendant is charged with both Access Device Fraud and Aggravated Identity Theft. Using the same reasoning, Knight challenges his sentence enhancements for the number of victims involved and for relocation to evade law enforcement and use of sophisticated means. In the alternative, Knight challenges the latter enhancement by arguing that the Government did not offer sufficient proof to support it.

---

[1] All references are to the 2010 version of the Guidelines, which the district court used at sentencing.

Additionally, both defendants argue that there was insufficient proof for the district court to impose the enhancement for device-making equipment.  Finally, Knight argues that the district court erred in denying him a three-level reduction under U.S.S.G. § 2X1.1(b)(2).

In addition to their challenges to the district court's Guidelines calculations, the defendants argue that their sentences were procedurally and substantively unreasonable.  Lyles further claims that the imposition of punishment under both 18 U.S.C. § 1029(a)(2) and 18 U.S.C. § 1028A violates the Double Jeopardy Clause.

After considering these arguments, we find no reversible error in the district court's decision. We therefore affirm each defendant's sentence.

## I.  Background

In February 2010, Knight, Lyles, and co-defendants were arrested at the Nashville airport after law enforcement discovered over 1,600 gift cards in their luggage, 977 of which were found to be encoded with credit information stolen from the customers of twenty-eight separate financial institutions.  The remaining cards were authentic and contained a value of approximately $61,419. The authentic cards were the fruits of a scheme in which participants obtained stolen credit information and encoded this information onto retailers' gift cards.  They then used the fraudulent gift cards to purchase legitimate gift cards and other items at thirteen Wal-Mart stores in the Nashville area.  In total, participants used 192 stolen credit card numbers to make purchases. Knight was found to have used forty-one stolen numbers to purchase seventy-eight gift cards worth $7,969.22.  Lyles was found to have bought $96.68 worth of merchandise using two stolen numbers.

Lyles and Knight were each charged with Conspiracy to Commit Access Device Fraud under 18 U.S.C. § 371; two separate substantive counts of Access Device Fraud under 18 U.S.C. §§ 1029(a)(2) and (3)[2]; and one count of Aggravated Identity Theft under 18 U.S.C. § 1028A.[3] The district court held a sentencing hearing for each defendant at which co-defendant Aisha Garrison and Secret Service Agent Thomas Riley testified. Over objections, the district court adopted the presentence report's recommendations for each defendant. Starting from a base offense level of six and a criminal history category of V for each defendant, the reports calculated that the defendants caused $488,500 in loss and added a fourteen-level enhancement under U.S.S.G. § 2B1.1(b)(1)(H). To reach this amount, the reports applied U.S.S.G. § 2B1.1 cmt. n.3(F)(i) and multiplied the total number of stolen credit card numbers (977) by $500. The reports proceeded to add to each defendant's sentence a four-level enhancement under U.S.S.G. § 2B1.1(b)(2)(B) because the crime had fifty or more victims; a two-level enhancement under U.S.S.G. §§ 2B1.1(b)(9)(A) and (C) because the defendants relocated to another jurisdiction to evade law enforcement and because the offense otherwise involved sophisticated means; and a two-level enhancement under U.S.S.G. §

---

[2] 18 U.S.C. § 1029(a)(2) covers a person who "knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period." 18 U.S.C. § 1029(a)(3) covers a person who "knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or unauthorized access devices." The statute defines an "access device" in relevant part as "any card, plate, code, [or] account number . . . that can be used . . . to obtain money, goods, services, or any other thing of value." 18 U.S.C. § 1029(e)(1). A "counterfeit access device" is "any access device that is counterfeit, fictitious, altered, or forged." 18 U.S.C. § 1029(e)(2). An "unauthorized access device" is "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." 18 U.S.C. § 1029(e)(3).

[3] 18 U.S.C. § 1028A requires a court to impose a twenty-four-month consecutive sentence if in the course of certain offenses—including Access Device Fraud under 18 U.S.C. §§ 1029(a)(2) and (3)—an offender "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."

2B1.1(b)(10)(A)(i) because the offense involved device-making equipment.[4] Lyles's report added

an additional four levels under U.S.S.G. § 3B1.1(a) for being the organizer of a criminal activity

involving five or more participants.[5] These calculations produced a Guidelines range of 140 to 175

months for Lyles and 100 to 125 months for Knight, with twenty-four months required to be

consecutive under 18 U.S.C. § 1028A. After considering the sentencing factors under 18 U.S.C. §

3553(a), the district court rejected the defendants' requests for downward variances and sentenced

Lyles to 164 months and Knight to 124 months.

Defendants timely appealed, and we exercise jurisdiction under 28 U.S.C. § 1291.

## II. Guidelines Calculations

Lyles and Knight offer a number of challenges to the district court's use of sentence

enhancements. We review the district court's interpretation of the Sentencing Guidelines *de novo*

and its findings of fact for clear error. *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012).

"'[R]eliance on the [presentence report] is insufficient when the facts are in dispute.' Rather, the

district court must *actually find facts*, and it must do so by a preponderance of the evidence." *United*

*States v. White*, 492 F.3d 380, 416 (6th Cir. 2007) (first alteration in original) (quoting *United States*

*v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003)). At sentencing, the district court may consider any

relevant evidence so long as it is supported by sufficient indicia of reliability. U.S.S.G. § 6A1.3(a).

---

[4] Lyles's presentence report initially did not include an enhancement for the use of device-making equipment. In response to the Government's objection to the absence of this enhancement, the probation officer responded that there was no evidence that Lyles or his co-defendants possessed or used device-making equipment. Presentence Investigation Report as to David Clay Lyles, Jr. at 28. The district court sustained the Government's objection and imposed the enhancement at Lyles's sentencing hearing. Tr. of Sentencing Hr'g as to David Clay Lyles, Jr. at 49.

[5] This enhancement is not challenged here.

### A. Lyles's Enhancement for Amount of Loss

To calculate the amount of loss attributable to the defendants, the district court followed U.S.S.G. § 2B1.1 cmt. n.3(F)(i). This comment provides that where, as here, a crime involves a counterfeit or unauthorized access device, "loss includes any unauthorized charges made with the counterfeit access device or unauthorized access device and shall not be less than $500 per access device." The district court read this language to impose an automatic $500 minimum loss for each of the 977 stolen credit card numbers possessed by the defendants. Multiplying $500 by 977, it reached a total loss of $488,500, resulting in a fourteen-level enhancement. Lyles argues that, under the correct interpretation of the Guidelines, the district court should have based its sentencing calculation on the actual loss of $61,419, resulting in a six-level enhancement.

This court rejected this interpretation in *United States v. Gilmore*, 431 F. App'x 428 (6th Cir. 2011), an unpublished opinion decided a month after Lyles's sentencing. In *Gilmore*, the defendant possessed 2,747 stolen Social Security and bank account numbers. The district court multiplied 2,747 by $500 even though the defendant never used any of the numbers. *Id.* at 429. We agreed and held that the Guidelines comment does not limit loss calculation to actual loss when the crime involves access devices. Rather, in this situation the comment provides a special rule for calculating loss. Under this special rule, loss is at least the number of access devices involved in the crime multiplied by $500. Only if the actual loss exceeds this number is it used to determine amount of loss for the purpose of the enhancement. *Id.* at 430. This is what the Guidelines specify, and we follow it here in rejecting Lyles's argument.

Lyles appears to concede that *Gilmore*'s interpretation of the special rule for access devices is correct. *See* Lyles Br. at 15. However, he points out that the district court in *Gilmore* found that the "overly harsh" sentence resulting from the $500 multiplier warranted a downward variance. *See Gilmore*, 431 F. App'x at 429–30. He argues that a similar variance is warranted here. This is a claim about the substantive reasonableness of Lyles's sentence. As we discuss in Section III below, the reasonableness of a sentence is an individual determination over which the district court has a significant amount of discretion. We note, however, what Lyles has *not* argued—that the $500 fictional amount is beyond the authority of the Sentencing Commission to impose because it is in conflict with the overarching "parsimony" provision of the Sentencing Reform Act. The $500 rule first appeared in the Guidelines in 2000. The Commission added what is now § 2B1.1 cmt. n.3(F)(i) after the Wireless Telephone Protection Act instructed it to "provide an appropriate penalty for offenses involving the cloning of wireless telephones." Pub. L. No. 105-172, § 2(e), 112 Stat. 53, 55 (1998). The Commission did not limit its change to wireless-telephone cloning, but amended the commentary to encompass all access devices. It explained that "the Commission's research and data supported increasing the minimum loss amount, previously provided only in §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft), from $100 to $500 per access device," U.S.S.G. Supp. App. C, Amend. 596, but the Commission did not elaborate upon the substance of its "research and data."[6]

---

[6] The Treasury Department advocated expanding use of the loss multiplier to all access devices. The Commission suggested that this change was warranted by the Identity Theft and Assumption Deterrence Act of 1998, Pub. L. No. 105-318, 112 Stat. 3007. The Treasury Department also proposed that the multiplier should be $1,000 per access device. *See* Notice of Proposed Permanent Amendments to the Sentencing Guidelines, Policy Statements, and Commentary, 65 Fed. Reg. 2663, 2668 (Jan. 18, 2000).

Theoretically, the $500 fictional amount should have to pass muster under the parsimony provision of 18 U.S.C. § 3553(a), which commands the court that it "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of punishment set out in the statute. In this case, for example, the special rule increased Lyles's punishment by eight levels, from 70-87 months to 140-175 months. A rule requiring courts to automatically double a sentence based on a fictional loss multiplier is a rule that may well produce a sentence greater than necessary to achieve punishment's aims. The parties have not raised, briefed, or argued this point, and we find no cases on the issue. Hence we only note the problem but do not decide it.

### B.   Knight's Enhancement for Amount of Loss

Conceding that our *Gilmore* opinion correctly interpreted the Guidelines, Knight has a different basis for contending that the district court incorrectly calculated amount of loss. He claims that the district court improperly ignored U.S.S.G. § 2B1.6 cmt. n.2. Section 2B1.6 provides that sentencing for Aggravated Identity Theft under 18 U.S.C. § 1028A is to be the twenty-four-month statutory period. However, the comment instructs that where a defendant is convicted of both Aggravated Identity Theft and an underlying offense—in this case, Access Device Fraud—the sentencing judge is not to "apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense." Knight interprets this language to prohibit sentence enhancements whenever a defendant is convicted of both Aggravated Identity Theft and a substantive offense that involves a "means of identification" as defined in 18 U.S.C. § 1028(d)(7). Because it is undisputed that 18 U.S.C. §§ 1029(a)(2) and (3)

involve the use and possession of means of identification, he argues that the comment should have provided relief and that he should have received only a six-level enhancement for actual loss.

Knight's interpretation of the comment is far broader than either precedent or reason will permit. The comment became part of the Sentencing Guidelines in 2005 to reflect the addition of 18 U.S.C. § 1028A to the federal code. Its purpose was to "avoid unwarranted double-counting" that would otherwise result from imposing a sentence under § 1028A for transfer, possession, or use of a means of identification as well as a separate enhancement for similar conduct. *See* U.S.S.G. Supp. App. C, Amend. 677. In other words, by both legislative intent and plain language, the comment bars enhancements for *specific offense characteristics*—defined by the Sentencing Guidelines—that involve the transfer, possession, or use of a means of identification. It is not a blanket prohibition on all enhancements for *substantive offense*s—defined by statute—that involve the transfer, possession, or use of a means of identification.

Courts interpreting § 2B1.6 cmt. n.2 have understood the application of the comment to depend on the language of a given specific offense characteristic. For example, in *United States v. Sharapka*, 526 F.3d 58 (1st Cir. 2008), the First Circuit considered the comment in relation to U.S.S.G. § 2B1.1(b)(10). The court found that the comment "applies to certain enhancements under § 2B1.1(b)(10), but not to all." *Id.* at 62. Specifically, it found that the district court was correct to impose both a two-year sentence for Aggravated Identity Theft and an enhancement under U.S.S.G. § 2B1.1(b)(10)(A)(i), which covers "the possession or use of any device-making equipment." Because the specific offense characteristic involved only device-making equipment and not a means of identification, the comment did not forbid the enhancement. *Id.* The opinion also stated that had

the government sought additional punishment under U.S.S.G. § 2B1.1(b)(10)(C)(i), which covers "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification," then the comment would have barred the enhancement. *Id.*

This court used similar reasoning in *United States v. Wiley*, 407 F. App'x 938, 942 (6th Cir. 2011), when it upheld both a two-year sentence under U.S.S.G. § 2B1.6 and additional punishment under § 2B1.1(b)(10)(B)(i), which provides an enhancement for "the production or trafficking of any unauthorized access device or counterfeit access device." Because § 2B1.6 covers the *transfer, possession, or use* of a means of identification, and because the defendant could only be shown to have engaged in *production* of a means of identification, the comment did not prohibit the § 2B1.1(b)(10)(B)(i) enhancement. *Id.*

In essence, Knight argues that when a defendant is convicted of violating a statute that prohibits the transfer, possession, or use of a means of identification, no enhancements can be added to his sentence if he is also charged with Aggravated Identity Theft.[7] In light of the foregoing analysis, we decline to interpret § 2B1.6 cmt. n.2 so broadly. Rather, we hold what the plain language of the Guidelines suggests: When a defendant is convicted of both 18 U.S.C. § 1028A and an underlying offense, it is the specific offense characteristics as defined in the Guidelines—and not the definition of the underlying offense—that determines the applicability of § 2B1.6 cmt. n.2. Because the specific offense characteristic for amount of loss under U.S.S.G. § 2B1.1(b)(1) punishes

---

[7] Knight's argument is not helped by its internal confusion. If the comment is to be interpreted as broadly as he suggests, the amount-of-loss enhancement should not apply at all. Yet he would have us retain the enhancement for actual loss.

the defendant for inflicting a particular monetary harm rather than for transferring, possessing, or using a means of identification, we uphold the district court's fourteen-level enhancement.

### C.  Knight's Enhancement for an Offense Involving over Fifty Victims

Knight similarly argues that § 2B1.6 cmt. n.2 required the district court to count as victims only the twenty-eight financial institutions that actually suffered a loss.  This interpretation would reduce the four-level enhancement he received under U.S.S.G. § 2B1.1(b)(2) to a two-level enhancement.  We apply our analysis above and reject this argument.  The specific offense characteristic for number of victims under § 2B1.1(b)(2) punishes the impact of the crime, not the transfer, possession, or use of a means of identification.

### D.  Knight's Enhancement for Evading Law Enforcement and Sophisticated Means

We also reject Knight's argument that § 2B1.6 cmt. n.2 prevents an enhancement under U.S.S.G. §§ 2B1.1(b)(9)(A) and (C).  Section 2B1.1(b)(9)(A) imposes a penalty if "the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials."  Section 2B1.1(b)(9)(C) imposes a penalty if "the offense otherwise involved sophisticated means."  These specific offense characteristics punish multi-jurisdictional criminal enterprises and criminal methods that prevent detection by law enforcement. They do not punish the transfer, possession, or use of a means of identification.

In the alternative, Knight argues that there was insufficient proof for the district court to impose this enhancement.  Because the defendants were just as likely to be detected by airport security in Tennessee as they were in California, he contends, the relocation of the scheme to Tennessee could not have been for the purpose of evading law enforcement.  Rather, the defendants

came to Tennessee to avoid competition with others operating similar schemes in California. We are not convinced. We have recently rejected this "method of operation" argument where the defendant could not "otherwise explain why he was traveling from location to location." *United States v. Hessa*, 464 F. App'x 473, 475 (6th Cir. 2012). The same result is warranted here. At Knight's sentencing hearing, co-defendant Garrison indeed testified that the defendants did not come to Tennessee to avoid law enforcement in California. Tr. of Sentencing Hr'g as to Sylvester Knight, Jr. at 38. However, the district court chose to rely on Garrison's testimony that airport security in California had previously detained other participants in the scheme and that the defendants left California because many stores had begun to detect the use of fraudulent gift cards. *Id.* at 69. Especially in light of Knight's failure to offer a legitimate explanation for his travel, we cannot say that the district court's application of this enhancement was clear error.[8]

    E.   Lyles's and Knight's Enhancements for Use of Device-Making Equipment

Lyles and Knight next argue that the district court had insufficient evidence to impose a two-level enhancement under U.S.S.G. § 2B1.1(b)(10)(A)(i). This enhancement applies if "the offense involved the possession or use of any device-making equipment."[9] Both defendants point to co-defendant Garrison's testimony that she never personally observed device-making equipment. Lyles

---

[8] Knight also argues that his participation in the scheme did not involve sophisticated means. Because a § 2B1.1(b)(9) enhancement may rest solely on a finding that the defendant relocated the scheme to evade law enforcement, we need not address this contention.

[9] U.S.S.G. § 2B1.1 cmt. n.9(A) defines "device-making equipment" as it is defined in 18 U.S.C. § 1029(e)(6). In turn, that statute defines the term as "any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device." To use layman's terms, device-making equipment includes an encoder used to put credit card numbers onto the magnetic strips of gift cards.

also argues that Garrison's testimony did not have sufficient indicia of reliability, as required by

U.S.S.G. § 6A1.3.[10]

Because we understand the defendants to argue that a § 2B1.1(b)(10)(A)(i) enhancement is

impermissible unless they are shown to have actually used or possessed device-making equipment

themselves, we turn first to the proper interpretation of the Guidelines. Section 2B1.1(b)(10)(A)(i)

requires that the "offense involved the possession or use" of device-making equipment. To obtain

the enhancement, the Government may not rest on the mere fact that the defendants possessed or

used counterfeit gift cards, the creation of which necessarily required the use of device-making

equipment at some point. However, the Government need not show that the defendant personally

used the device-making equipment. This is because under U.S.S.G. § 1B1.3, the defendant's

sentence must account for "relevant conduct"—both his own and that of others.

The commentary to the relevant-conduct Guideline provides that "[t]he principles and limits

of sentencing accountability under this guideline are not always the same as the principles and limits

of criminal liability." U.S.S.G. § 1B1.3 cmt. n.1. Specifically with regard to § 1B1.3(a)(1), "the

focus is on the specific acts . . . for which the defendant is to be held accountable in determining the

applicable guideline range, rather than on whether the defendant is criminally liable for an offense

as a principal, accomplice, or conspirator." *Id.* As defined in § 1B1.3(a)(1)(A), relevant conduct

includes acts that the defendant "committed, aided, abetted, counseled, commanded, induced,

---

[10] Notably, Lyles did not suggest at the sentencing hearing that Garrison was an unreliable witness. His position on this issue appears to be a reiteration of his argument that there was insufficient evidence to find that he had used device-making equipment. *See* Lyles Br. at 16–18.

procured, or willfully caused" during the commission of the offense or in preparation for it. As defined in U.S.S.G. § 1B1.3(a)(1)(B), it also includes "jointly undertaken criminal activity." The commentary defines "jointly undertaken criminal activity" as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." U.S.S.G. § 1B1.3 cmt. n.2. Where the defendant jointly undertakes criminal activity with others, he may be held accountable for the act of another that was both in furtherance of the jointly undertaken criminal activity and reasonably foreseeable in connection with that criminal activity. *Id.*

Lyles's conduct easily falls within the scope of § 1B1.3(a)(1)(A). At Lyles's sentencing hearing, co-defendant Garrison testified that "him [Lyles] and his wife" encoded the gift cards with stolen credit information using a machine. Tr. of Sentencing Hr'g as to David Clay Lyles, Jr. at 13. Though Garrison admitted she never saw the machine, she testified that Lyles told her that he had used the machine before, but that he let his wife use it most of the time because she was better at it. *Id.* at 28–29. This testimony established that Lyles aided and abetted his wife in using the device-making equipment that created the cards at issue here—indeed, it shows that Lyles used the encoder himself. We thus cannot say that the district court clearly erred in applying the enhancement for device-making equipment to Lyles's sentence.

Moreover, we reject Lyles's claim that Garrison's testimony did not have sufficient indicia of reliability. Lyles's cross-examination of Agent Riley elicited the fact that Garrison had previously reported to law enforcement that Lyles's wife encoded the cards for Lyles's use. *Id.* at 39–40. Given that the reliability of Garrison's testimony has not otherwise been called into question, this

consistency is sufficient to meet the "low reliability threshold" of U.S.S.G. § 6A1.3. *United States v. Stout*, 599 F.3d 549, 558 (6th Cir. 2010) (stating that the minimum-indicia-of-reliability standard imposes a "relatively low hurdle").

As for Knight, the indictment charged Lyles, Knight, and others in count one with participating in a conspiracy in Tennessee between February 1 and 3, 2010. The indictment also charged Lyles and Knight in counts two and three with substantive counts of Access Device Fraud and in count four with a substantive count of Aggravated Identity Theft, all of which were committed in Tennessee during the same time period. In each of the three substantive counts, the indictment alleged that Lyles and Knight aided and abetted each other in committing the criminal conduct.

The evidence the Government presented at Knight's sentencing established that Knight and Lyles were jointly involved in similar criminal activity in other jurisdictions starting in October 2009. Lyles used, or had his wife use, device-making equipment to encode gift cards with stolen credit card numbers. Lyles then provided encoded cards to Knight, who used them to make retail purchases of legitimate gift cards. Knight turned over to Lyles some of the legitimate gift cards that he purchased with the fraudulent access devices, and he also kept some of the cards for himself. Lyles's conduct in using device-making equipment to produce encoded gift cards aided and abetted Knight's use of the fraudulent cards in retail stores, and by using the fraudulent cards to make purchases, Knight aided and abetted Lyles's ongoing fraudulent scheme, which eventually ended in Tennessee. Without Lyles's use of device-making equipment to encode gift cards, Knight could not have committed the offenses to which he pled guilty. It was reasonably foreseeable to Knight that Lyles or his wife used device-making equipment in furtherance of the jointly undertaken criminal

activity, and that such equipment was used in preparation for his offenses of conviction in Tennessee. *See* U.S.S.G. § 1B1.3 cmt. n.2.

The district court properly based its conclusion on the evidence presented. It imposed the two-level enhancement under § 2B1.1(b)(10)(A)(i) because "everyone knew" that device-making equipment was used to perpetrate the fraudulent scheme, because Knight was present on occasions when Lyles called his wife to make sure the equipment was working properly, and because use of the device-making equipment was "jointly undertaken criminal activity that was foreseeable reasonably" to Knight. Tr. of Sentencing Hr'g as to Sylvester Knight, Jr. at 70–71. The enhancement was not applied to Knight in error.

In sum, neither Lyles nor Knight can show that the enhancement for device-making equipment was clearly erroneous. Their contentions on this issue fail.

F. Denial of Reduction under U.S.S.G. § 2X1.1(b)(2)

Knight next argues that U.S.S.G. § 2B1.1 cmt. n.17 and U.S.S.G. § 2X1.1(b)(2) entitle him to a three-level reduction. Section 2B1.1 cmt. n.17 applies to "partially completed offenses" and states:

> In the case of a partially completed offense (e.g., an offense involving a completed theft or fraud that is part of a larger, attempted theft or fraud), the offense level is to be determined in accordance with the provisions of §2X1.1 (Attempt, Solicitation, or Conspiracy) whether the conviction is for the substantive offense, the inchoate offense (attempt, solicitation, or conspiracy), or both. See Application Note 4 of Commentary to §2X1.1.

Section 2X1.1(b)(2) provides that a conviction for conspiracy is to be reduced by three levels from the substantive offense unless

the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

Section 2X1.1 cmt. n.4, referenced in § 2B1.1 cmt. n.17, states:

> In certain cases, the participants may have completed (or have been about to complete but for apprehension or interruption) all of the acts necessary for the successful completion of part, but not all, of the intended offense.  In such cases, the offense level for the count (or group of closely related multiple counts) is whichever of the following is greater: the offense level for the intended offense minus 3 levels (under §2X1.1(b)(1), (b)(2), or (b)(3)(A)), or the offense level for the part of the offense for which the necessary acts were completed (or about to be completed but for apprehension or interruption).  For example, where the intended offense was the theft of $800,000 but the participants completed (or were about to complete) only the acts necessary to steal $30,000, the offense level is the offense level for the theft of $800,000 minus 3 levels, or the offense level for the theft of $30,000, whichever is greater.

The background section of § 2X1.1 provides additional guidance:

> In most prosecutions for conspiracies or attempts, the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim.  In such cases, no reduction of the offense level is warranted.  Sometimes, however, the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense.  Under such circumstances, a reduction of 3 levels is provided under §2X1.1(b)(1) or (2).

Knight and the Government draw opposing conclusions from these provisions.  Knight argues that they warrant a reduction because he and his co-defendants achieved only some of the conspiracy's aims.  The offense was only "partially completed" because the co-defendants intended to steal much more than they did, and thus the § 2X1.1 reduction should apply.  The Government counters that, because Knight pleaded guilty to the completed offense of Access Device Fraud, his offense was not "partially completed."  Though he and his co-defendants did not steal as much

money as intended, Knight's guilty plea establishes that he performed all the acts required for conviction under 18 U.S.C. §§ 1029(a)(2) and (3).

Resolution of this issue is not helped by the Sentencing Guidelines themselves, which fail to define the term "partially completed offense" except through the examples given in § 2B1.1 cmt. n.17 and § 2X1.1 cmt. n.4. In light of this confusion, courts have split on how to define a "partially completed offense." In *United States v. John*, 597 F.3d 263 (5th Cir. 2010), the defendant fraudulently obtained information for seventy-six bank accounts, but used the information to access only four of the accounts. *Id.* at 269. She was convicted of Access Device Fraud under 18 U.S.C. § 1029(a)(5). *Id.* at 269–70. The court held that the offense was "partially completed" within the meaning of § 2B1.1 cmt. n.17, because to complete the full extent of the scheme would require additional action on the part of the conspirators to access the seventy-two other accounts. *Id.* at 283–84. The Ninth Circuit reached an opposite result in *United States v. Tulaner*, 512 F.3d 576 (9th Cir. 2008), a case in which the defendant pleaded guilty to wire fraud after attempting to obtain discs used to produce semiconductor chips. Though the defendant had intended to obtain twelve discs in all, the count to which he pleaded guilty was based on a phone call in which he attempted to pay for only four discs. *Id.* at 580. The court held that the relevant inquiry when deciding whether to apply the § 2X1.1 reduction is whether the defendant completed the substantive offense, not whether he achieved the extent of his fraudulent aims. *Id.* at 580–81; *accord United States v. Calvin*, 191 F. App'x 453 (7th Cir. 2006).

The most relevant precedent from this court is *United States v. DeSantis*, 237 F.3d 607 (6th Cir. 2001). In *DeSantis*, the defendant's attempt to commit bankruptcy fraud was thwarted by the

United States trustee. *Id.* at 611. The defendant subsequently pleaded guilty to bankruptcy fraud. *Id.* at 609. The district court provided a reduction under § 2X1.1(b)(1), and we reversed. We held that the "relevant substantive offense for purposes of evaluating § 2X1.1(b)(1) attempts is the fraud itself, not fraudulent deprivation of a particular sum." *Id.* at 612–13. Because the defendant pleaded guilty and because he completed all the elements of the offense, he could not avail himself of the attempt reduction under § 2X1.1(b)(1). *Id.* at 613–14.

*DeSantis* is not completely on point in this case. Unlike *John* and *Tulaner*, it did not interpret § 2B1.1 cmt. n.17. Nevertheless, we find its reasoning to be convincing. Similar to the attempt-reduction provision interpreted in *DeSantis*, the conspiracy-reduction provision of § 2X1.1(b)(2) does not apply if "the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the *substantive offense* . . . ." (emphasis added). Because § 2B1.1 cmt. n.17 does not provide sufficient reason to interpret "partially completed offense" otherwise, we concur with *DeSantis* that "courts should turn to the statutory definition of the offense to determine" whether an offense was complete for the purpose of applying § 2X1.1. *DeSantis*, 237 F.3d at 613. If the defendant pleads guilty to a substantive offense and in fact performed the acts needed to complete the offense, then a reduction under § 2X1.1 is unavailable. This understanding is consistent with the background comment of § 2X1.1, which suggests that the reduction is only to be applied when "the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense."

Returning to this case, Knight pleaded guilty to 18 U.S.C. § 1029(a)(2), which prohibits use of one or more unauthorized access devices to obtain anything valued at over $1,000. He also

pleaded guilty to 18 U.S.C. § 1029(a)(3), which prohibits possession of fifteen or more counterfeit

or unauthorized access devices. It is uncontroverted that Knight used forty-one stolen credit card

numbers to purchase seventy-eight gift cards worth $7,969.22, conduct that satisfies the elements

of both statutes. We therefore find that the district court properly denied his request for a reduction

under § 2X1.1(b)(2).

### III.    Procedural and Substantive Reasonableness

Lyles and Knight challenge the procedural and substantive reasonableness of their sentences.

We review this claim for abuse of discretion, keeping in mind a split in the circuits and that in this

circuit a sentence within the Guidelines range is afforded a rebuttable presumption of reasonableness.

*United States v. Evers*, 669 F.3d 645, 661 (6th Cir. 2012). A sentence is procedurally unreasonable

if the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory,

fails to adequately consider the sentencing factors under 18 U.S.C. § 3553(a), bases the sentence on

erroneous facts, or fails to adequately explain the sentence. *United States v. Brinley*, 684 F.3d 629,

633 (6th Cir. 2012). Substantive unreasonableness will be found when "the district court selects a

sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing

factors, or gives an unreasonable amount of weight to any pertinent factor." *Id.* at 636.

We reject the defendants' procedural reasonableness claims. The district court correctly

calculated the Guidelines, addressed each of the § 3553(a) factors, and explained its reasoning for

the sentence.

The defendants address the bulk of their arguments to substantive unreasonableness. Lyles

claims that the district court failed to consider mitigating circumstances in his background. Knight

argues that the district court afforded insufficient weight to evidence showing both his troubled upbringing and his ability to be a productive member of society before the loss of his fiancée in a car accident led to his recidivism. And each defendant argues that he was entitled to the same result achieved by the defendant in *Gilmore*, where the district court granted a downward variance because the $500-per-access-device rule produced a severe result. *See Gilmore*, 431 F. App'x at 429–30.

These arguments provide an inadequate basis for finding substantive unreasonableness. Assuming the validity of U.S.S.G. § 2B1.1 cmt. n.3(F)(i), discussed in Section II.A above, the discretion we afford the district court's decision means that a within-Guidelines sentence is presumed reasonable, and that "an appellate court should not overturn a sentence just because it believes that another sentence would be appropriate." *United States v. Young*, 553 F.3d 1035, 1055 (6th Cir. 2009). In theory, at least, we may disturb a within-Guidelines sentence if the defendant rebuts the presumption of reasonableness. Our cases have not adequately explained how a defendant might successfully rebut the reasonableness of a sentence within the Guidelines range. Indeed, we search in vain for a case where a defendant has successfully rebutted the reasonableness of a within-Guidelines sentence. *Cf. United States v. Pruitt*, 502 F.3d 1154, 1166 (10th Cir. 2007) (McConnell, J., concurring) ("[I]t seems to me that the rebuttability of the presumption is more theoretical than real."). Whatever the standard, though, Lyles and Knight have not shown that the district court abused its discretion.

The district court noted Lyles's mitigating circumstances but determined that the sentence was warranted because of Lyles's leadership role and the serious nature of the crime. Tr. of Sentencing Hr'g as to David Clay Lyles, Jr. at 57–60. The district court also discussed Knight's

mitigating circumstances, but found the sentence justified by the seriousness of the offense and the need for general deterrence. Tr. of Sentencing Hr'g as to Sylvester Knight, Jr. at 79–83. Though the district court did not afford the defendants' mitigating circumstances the weight they would have preferred, it did not place inappropriate weight on any factor such as to make the sentences substantively unreasonable.

None of the defendants' other arguments makes out a case for substantive unreasonableness. If the Guidelines are to be attacked as the defendants wish to attack them, this should be done through a claim rooted in the fictional $500 loss enhancement. On substantive reasonableness review, we examine the sentencing court's treatment of the defendant, not an argument about the $500 enhancement that has not been raised. As to the lenient sentence handed down in *Gilmore*, neither defendant argues that the district court failed to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as required by § 3553(a)(6). It was well within the district court's discretion to deny Lyles and Knight the downward variance that the *Gilmore* defendant received.[11] The harshness of the $500-per-access-device rule will certainly justify a downward variance in the eyes of some judges, but that is an individualized determination to be made by the sentencing court.

In sum, we reject the defendants' procedural and substantive reasonableness challenges.

---

[11] Indeed, *Gilmore* had not been issued at the time Lyles was sentenced. It was released on July 6, 2010, the day of Knight's sentencing.

## IV. Double Jeopardy

Lyles contends that his conviction for both Access Device Fraud under 18 U.S.C. § 1029(a)(2) and Aggravated Identity Theft under 18 U.S.C. § 1028A violates the Double Jeopardy Clause under the analysis of *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not."). We rejected this exact argument in *United States v. White*, 296 F. App'x 483 (6th Cir. 2008). In *White*, we held that the *Blockburger* test does not apply to a double jeopardy analysis of § 1029(a)(2) and § 1028A, because Congress clearly intended that the sentence prescribed by § 1028A should run consecutively to any sentence imposed under § 1029(a)(2). *Id.* at 490–91. This result was required by *Garrett v. United States*, 471 U.S. 773, 778 (1985), which held that "[w]here the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature—in this case Congress—intended that each violation be a separate offense." Lyles's attempt to distinguish *White* is unavailing, and we repeat that a conviction under both 18 U.S.C. § 1029(a)(2) and 18 U.S.C. § 1028A does not violate the Double Jeopardy Clause.[12]

## V. Conclusion

For the reasons discussed above, we affirm the sentences in these cases.

---

[12] The district court rested its double jeopardy decision not on *White* and *Garrett* but on *Blockburger*. We do not address the correctness of the district court's *Blockburger* analysis. Even if the district court's analysis was erroneous, its result was correct, and we may affirm on any basis supported by the record. *See Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002).

**McKEAGUE, Circuit Judge, concurring in part and dissenting in part.** I am in agreement with practically all of the majority opinion. I write separately to state my disagreement with that portion of Section II.A. that discusses the parsimony provision of 18 U.S.C. § 3553(a) and "what Lyles has not argued." This portion of the opinion is dicta; indeed, as noted in the following paragraph, the issue is not before the court. The court devises an argument and invites litigation on an issue that we should not consider. Rather than suggesting that a litigant employ the parsimony provision to raise a challenge to U.S.S.G. § 2B1.1, I would leave the discussion for a future date when the issue is properly raised on appeal. For this reason, I dissent from that portion of the opinion.