**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 25, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSEPH WILLIAM HEATH,

    Defendant-Appellant.

No. 10-7087

(D.C. No. 6:CR-10-00018-RAW-1)
(E. D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **ANDERSON** and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Joseph William Heath pleaded guilty, without a plea agreement, to conspiracy to commit fraud in connection with access devices, in violation of 18

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

U.S.C. § 371. He was sentenced to thirty-two months' incarceration and thirty-six months' supervised release. Heath challenges the procedural reasonableness of his sentence, arguing that the district court improperly included a ten-level upward adjustment pursuant to U.S.S.G. § 2B1.1(b)(1)(F) based on an amount of loss greater than $120,000 but less than $200,000 and a four-level "leader or organizer" enhancement pursuant to U.S.S.G. § 3B1.1(a). Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Pursuant to a criminal investigation in Durant, Oklahoma into a scheme to use counterfeit credit cards to rent hotel rooms and steal items from the rooms, the Durant Police Department received information from employees at a local Hampton Inn that a group of individuals had rented two hotel rooms and that a television was missing from one of the rooms. ROA, Vol. 3 at 4–5. When police officers arrived at the Hampton Inn, an individual from the group was found sleeping in one of the identified rooms. Id. at 5. Police officers questioned this individual, and she revealed the identities of the remaining members of the group and details regarding their vehicles. Id.

Based on this information, police officers located and stopped a "two-door silver Honda Civic" that Heath and Sarah Puryear occupied. Id. When the vehicle was stopped, police officers "observed a television that appeared to match the description of the missing television . . . at the Hampton Inn." Id. Heath and

2

Puryear were arrested. Id. The vehicle was impounded and, pursuant to a search warrant, the following items were found in the vehicle:

> 265 registration forms from the Quality Inn, located [in] Arlington, Texas, which included copies of drivers licenses, credit card numbers, credit card expiration dates, and home addresses of persons who had previously stayed at the hotel; 14 altered gift cards; 20 unaltered gift cards, 3 label makers; 6 labels with credit card numbers and letters printed on them; 15 sheets of Avery easy peal labels; 2 packages of Avery self adhesive laminating sheets; and, 2 multi-colored fingernail sanding blocks.

Id. During questioning, Puryear explained that:

> Heath had . . . obtained the credit card information from a friend of his who was employed by the Quality Inn in Arlington, Texas. This employee showed Heath where the daily credit card receipts were stored. Heath would go there, break into the room and remove the documents. . . . [T]he information obtained was used by Heath to manufacture counterfeit credit cards.

Id. at 6.

A grand jury returned a three-count indictment against Heath, along with five other individuals, charging him with: (1) conspiracy to commit fraud in connection with access devices, in violation of 18 U.S.C. § 371; (2) use of a counterfeit access device, in violation of 18 U.S.C. § 1029(a)(1); and (3) possession of fifteen or more counterfeit access devices, in violation of 18 U.S.C. § 1029(a)(3). ROA, Vol. 1 at 7–10. As one of the overt acts in furtherance of the charged conspiracy, the indictment asserted:

> [Heath] obtained valid credit card numbers, specifically:
>     a.    300 registration packets from a Quality Inn [in] . . . Arlington, Texas. This information included copies of drivers licenses, credit card numbers, credit card expiration dates and home

3

addresses of persons who had previously stayed at this hotel. Id. at 8. Heath waived his "Sixth Amendment rights to a jury in all respects both as to guilt or innocence and as to sentencing," id. at 11, and he pleaded guilty, without a plea agreement, to the conspiracy charged in the indictment, id. at 20. The remaining charges in the indictment were dismissed. Id.

The presentence investigation report (PSR) identified the base offense level as 6 for conspiracy to commit fraud in connection with access devices, in violation of 18 U.S.C. § 371. ROA, Vol. 3 at 9 (applying U.S.S.G. § 2X1.1 to incorporate the base offense level under U.S.S.G. § 2B1.1 for the substantive offense of use of an access device, in violation of 18 U.S.C. § 1029). The PSR then included the following upward adjustments: a ten-level upward adjustment pursuant to U.S.S.G. § 2B1.1(b)(1)(F) based on the amount of intended loss from the scheme calculated as $143,000; and a two-level upward adjustment pursuant to U.S.S.G. § 2B1.1(b)(10)(A)(i) for the "possession or use of any device making equipment." ROA, Vol. 3 at 9–10. The PSR also included a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) because Heath "was the organizer of the fraudulent use of access devices that involved five other participants." ROA, Vol. 3 at 10.

With regard to the ten-level upward adjustment for the amount of loss, the PSR explained that, while "[t]he actual loss in this case is $1,387.65," "the total intended loss in this case is $143,000." Id. at 9–10. Pursuant to Application Note

4

3(F)(i) to U.S.S.G. § 2B1.1, the PSR calculated the intended loss amount based on the fact that "[t]here were a minimum of 286 fraudulent 'access devices' possessed by [Heath] in this case" and applying an assumed "loss of $500.00 per access device." ROA, Vol. 3 at 10. As for the four-level "leader or organizer" enhancement, the PSR explained that:

> Heath secured fraudulent credit card numbers, recruited accomplices to include Puryear, [Laura Madden, Melissa Kulp, Daniel Jeffery, and Kelly Speigle], manufactured fraudulent credit cards and taught co-defendants to manufacture fraudulent cards, thereby, establishing that he was the organizer of the fraudulent use of access devices that involved five other participants.

Id.

The PSR included a three-level reduction pursuant to U.S.S.G. §§ 3E1.1(a) and (b) based on Heath's "affirmative acceptance of personal responsibility for his conduct." ROA, Vol. 3 at 10. As a result, the PSR calculated Heath's total offense level as 19. Id. Based on the total offense level of 19 and his criminal history category of I, the PSR identified Heath's applicable sentencing guidelines range as thirty to thirty-seven months' incarceration. Id.

Heath filed two objections to the PSR. Id. at 16, 23. First, Heath objected to the inclusion of the ten-level upward adjustment in his offense level, arguing that the PSR lacked adequate evidence to support the calculated intended loss of $143,000. Id. at 16. Heath specifically "dispute[d] that there is any proof developed in this case to support" the proposition that he possessed a "minimum

5

of 286 fraudulent 'access devices.'" Id.  While he recognized that there were "a number of credit card receipts that provide varying degrees of information which may or may not be sufficient to . . . create a fraudulent credit card," he argued that "[a] credit card number in itself is not sufficient to create a fraudulent credit card." Id.  Thus, he argued that "[a]n unused credit card number is not an access device as that term is used in the sentencing guidelines." Id.  Second, Heath objected to the inclusion of the four-level "leader or organizer" enhancement. Id. at 23.  He argued that the "events involved in this case did not support the enhancement." Id.

During sentencing, the district court addressed Heath's objections.  First, with regard to Heath's objection to the ten-level upward adjustment, the district court overruled the objection and "f[ound] by a preponderance of the evidence that the loss amount used in the calculation of the advisory guidelines was appropriate as included in the [PSR]." ROA, Vol. 2 at 15.  The district court reasoned:

> Pursuant to [U.S.S.G. §] 2B1.1, Application Note 3(A), loss is the greater of actual or intended loss.  Further, note (3)(F)(i) pertains to special rules that shall be used to assist in determining a loss with regard to stolen or counterfeit credit cards and access devices; purloined numbers -- access devices; purloined numbers and codes.  It states that in a case involving any counterfeit access device or an unauthorized access device or unauthorized access devices shall not be less than $500.00 per access device.  This subsection refers to Application Note 9(A) and subsequently 18 [U.S.C. §] 1029(e)(3), for the meaning given the term "unauthorized access device.["]  Pursuant to 18 [U.S.C. §] 1029(e)(3), account numbers that can be used, alone or in conjunction with another access device, to obtain money, goods,

6

services, or any other thing of value are considered access devices. Based on the evidence in this case, the defendant possessed 286 account numbers. These numbers were taken from registration forms which included copies of driver's licenses, credit card numbers, expiration dates, and home addresses, in addition to the credit card account numbers.

Id. at 14–15. As a result, the district court determined that Heath possessed 286 "access devices" pursuant to 18 U.S.C. § 1029. See id. Based on the evidence that Heath possessed 286 access devices and applying the assumed loss of five hundred dollars per access device, the district court "found the same [$143,000] of loss" as identified in the PSR. Id. at 15. Thus, the district court included the ten-level upward adjustment pursuant to U.S.S.G. § 2B1.1(b)(1)(F) for a loss greater than $120,000 but less than $200,000 when calculating Heath's guidelines range.

Second, the district court addressed Heath's objection to the four-level enhancement for his organizational or leadership role in the scheme. See id. at 15–17. The district court overruled Heath's objection, "find[ing] by a preponderance of the evidence that the defendant was an organizer/leader in this scheme and is appropriately given a four level enhancement, pursuant to U.S.S.G. [§] 3B1.1(a)." Id. at 16–17. The district court reasoned:

> [U.S.S.G. §] 3B1.1, Application Note 4 states that the factors the Court should consider for an aggravating role adjustment includes the exercise of decision-making authority, the nature of participation in the commission of offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

7

Without Heath's participation, there would have been no fraudulent access devices. Heath obtained registration forms that include had [sic] copies of driver's license, credit card expiration dates, and home addresses, in addition to the credit card account numbers, which were used in the manufacture of fraudulent access devices . . . . Heath gave the illegally obtained credit card information to co-defendants, . . . and taught them to manufacture access devices and to call "merchant lines" to verify the numbers were valid. At Heath's direction, [Speigle and Jeffery] traveled to Durant, Oklahoma, and used fraudulent cards, made by [H]eath, to secure hotel rooms and merchandise.

Based on the evidence in this case, [Heath]'s actions of securing fraudulent credit card numbers, recruiting accomplices, manufacturing fraudulent credit cards and teaching others to manufacture fraudulent credit cards establish that he was the organizer of the criminal activity involving the fraudulent use of access devices. Furthermore, there were five other participants that were less culpable participants in this scheme.

Id. at 15–16.

After considering the 18 U.S.C. § 3553(a) factors, the district court sentenced Heath to thirty-two months' incarceration and thirty-six months' supervised release. Id. at 21–22. The district court also imposed restitution of $765.09 against Heath and his co-defendants jointly and severally. Id. at 23. Heath appeals his sentence.

## II. ANALYSIS

On appeal, Heath reasserts his challenges to the inclusion of the ten-level upward adjustment for the amount of loss and the four-level "leader or organizer" enhancement when calculating his guidelines range. Aplt. Br. at 5. First, Heath argues that the district court improperly applied a ten-level upward adjustment for the intended amount of loss calculated based on his possession of 286 "access

8

devices." He contends that evidence of his possession of 286 valid credit card account numbers was insufficient to establish his possession of 286 "access devices" under 18 U.S.C. § 1029. Id. at 9. Second, Heath argues that the district court lacked sufficient evidence to justify a four-level enhancement for his leadership or organizational role in the criminal activity. He contends that "[t]he statements in the [PSR] do not support a determination that Heath was an organizer or leader for purposes of [this enhancement]." Id. at 11–12.

A. *Standard of review*

This court reviews a criminal sentence for reasonableness, under a deferential abuse of discretion standard. United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1214 (10th Cir. 2008). This reasonableness review has both procedural and substantive components. Id. On appeal, Heath challenges the procedural reasonableness of his sentence, contending that the district court improperly calculated his guidelines range. See Gall v. United States, 552 U.S. 38, 51 (2007) (explaining that procedural errors include "improperly calculating[] the Guidelines range"). When evaluating the procedural reasonableness of a sentence, this court "review[s] the district court's legal conclusions regarding the Guidelines de novo and its factual findings for clear error." United States v. Hamilton, 587 F.3d 1199, 1219 (10th Cir. 2009).

B. *Upward adjustment based on the calculated amount of intended loss*

9

Heath argues that the district court had inadequate evidence to support its calculation of the amount of intended loss from the scheme. While Heath does not dispute his possession of 286 valid credit card account numbers, he asserts that the credit card account numbers themselves do not constitute "access devices" within the meaning of 18 U.S.C. § 1029. This court reviews the district court's interpretation of the term "access device" de novo.[1] See Hamilton, 587 F.3d at 1222. We conclude that the valid credit card account numbers Heath possessed constitute "access devices" under 18 U.S.C. § 1029 and that the district court properly applied the ten-level upward adjustment based on the calculated intended loss of $143,000.

Pursuant to U.S.S.G. § 2B1.1(b)(1)(F), when an offense involves fraud or altered or counterfeit instruments and results in a loss that exceeds $120,000 but is less than $200,000, ten levels are added to the base offense level. To determine the amount of loss, Application Note 3 explains that the "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). While the actual

---

[1] Heath's references to the district court's fact-finding obligations pursuant to Federal Rule of Criminal Procedure 32(i)(3)(B) are inapplicable in this context. Rather than disputing the PSR's factual findings, Heath challenged the application of the guidelines to the facts. See United States v. Cereceres-Zavala, 499 F.3d 1211, 1215 (10th Cir. 2007) (explaining that "[a]rguments that challenge the district court's application of the guidelines to the facts and not the facts themselves do not trigger any obligation on the part of the district court to make specific findings" (internal quotation marks omitted)). Thus, Heath's objection to the PSR did not trigger the district court's fact-finding obligations pursuant to Rule 32(i)(3)(B).

loss incurred in this case was $1,387.65, ROA, Vol. 3 at 9, the district court calculated the intended loss as $143,000, see ROA, Vol. 2 at 14 (agreeing to the intended loss calculated in the PSR).

According to Application Note 3, intended loss "means the pecuniary harm that was intended to result from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(ii). The guidelines specify that, for offenses involving "any counterfeit access device or unauthorized access device, loss . . . shall be not less than $500 per access device." Id. cmt. n.3(F)(i). To define the terms "counterfeit access device" and "unauthorized access device," the guidelines refer to the definitions in 18 U.S.C. § 1029. U.S.S.G. § 2B1.1 cmt. n.3(F)(i) (referring to id. cmt. n.9(A), which incorporates the "meaning[s] given th[ose] term[s] in 18 U.S.C. § 1029[]").

Pursuant to 18 U.S.C. §§ 1029(e)(2) and (3), the definitions of the terms "counterfeit access device" and "unauthorized access device" both incorporate the term "access device." The term "access device" is then defined as:

> any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

18 U.S.C. § 1029(e)(1).

Heath argues that credit card account numbers alone do not constitute "access devices" within the meaning of 18 U.S.C. § 1029(e)(1). See Aplt. Br. at

11

9. In his objections to the PSR, Heath asserted:

> What there is in this case is a number of credit card receipts with varying degrees of information which may or not be sufficient to allow the information to be used to create a fraudulent credit card. The counterfeiter needs not only the credit card number, but expiration date, name of credit cardholder and billing address. Additionally, the card must be active at the time of the attempted use.

ROA, Vol. 3 at 16. We disagree with Heath's interpretation.

First, Heath's interpretation of the term "access device" is inconsistent with the plain language of the statute. The plain language of 18 U.S.C. § 1029(e)(1) specifically identifies an "account number" as an "access device." Further, because the statute requires only that a "means of account access" be capable of obtaining anything of value either alone or in conjunction with another access device, Heath's argument that a credit card account number is insufficient to create a fraudulent credit card is meritless.[2] Thus, the valid credit card account numbers Heath possessed constitute "access devices" pursuant to the plain language of 18 U.S.C. § 1029(e)(1).

Second, Heath's interpretation of the term "access device" is inconsistent with this court's prior statements regarding the scope of 18 U.S.C. § 1029. This court has explained:

[2] We note here that Heath's own actions through his use of credit card numbers and names assigned thereto to rent hotel rooms for himself and his accomplices establish that an actual credit card need not be created in order "to obtain money, goods, services, or any other thing of value . . . ." 18 U.S.C. § 1029(e)(1).

12

In enacting [18 U.S.C.] § 1029, Congress was focused upon the fraudulent use of access devices in connection with credit transactions. Congress sought to address the growing problem in counterfeit credit cards and unauthorized use of account numbers or access codes to banking system accounts. <u>Congress sought to include in its definition of access devices, credit cards, debit cards, account numbers and combinations of these and other methods of obtaining goods and services</u>.

United States v. McNutt, 908 F.2d 561, 563 (10th Cir. 1990) (emphasis added) (internal quotation marks, ellipses, and citations omitted). Thus, the credit card account numbers Heath possessed fall within the intended scope of the term "access device" in 18 U.S.C. § 1029. Because Heath did not dispute his possession of 286 valid credit card account numbers, the district court properly found that he possessed 286 "access devices." Applying the assumed loss of five hundred dollars per access device, the district court properly calculated the intended amount of loss as $143,000. Thus, we conclude that the district court properly included the ten-level upward adjustment to Heath's offense level.

*C. Leader or organizer enhancement*

Heath argues that the district court had insufficient evidence to justify the inclusion of the four-level enhancement for his organizational role in the scheme. Aplt. Br. at 9. He contends that "[t]he statements in the [PSR] do not support a determination that Heath was an organizer or leader for purposes of [U.S.S.G.] § 3B1.1(a)" because

> there is a lack of evidence that Heath exercised decision making authority over the other participants, any recruitment of accomplices, a claimed right to a larger share of the fruits of the crime, or any degree of control and

13

authority exercised by him over the others. No one in this conspiracy worked for Heath, nor did he control or have any responsibility for their activities.

Aplt. Br. at 11–12. We conclude that the district court's factual finding was not clearly erroneous.

Pursuant to U.S.S.G. § 3B1.1(a), a defendant's offense level is increased four levels "[i]f [he] was an organizer or leader of a criminal activity that involved five or more participants." Thus, "[t]o impose the 4-level increase, the sentencing court must make two findings of fact: first, that defendant is an organizer or leader; and second, that the criminal activity involved five or more participants." United States v. Roberts, 14 F.3d 502, 523 (10th Cir. 1993). Heath challenges only the finding that he was an organizer of the scheme.

This court has noted that "[t]he gravamen of the enhancement is either the exercise of control over other participants or the organization of others for the purpose of carrying out the crime." United States v. Spears, 197 F.3d 465, 469 (10th Cir. 1999) (internal quotation marks omitted). Application Note 4 to U.S.S.G. § 3B1.1 provides the following factors that a sentencing court should consider when determining whether an individual was a leader or organizer of criminal activity:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

14

U.S.S.G. § 3B1.1 cmt. n.4.

We conclude that the PSR provided sufficient evidence to support the district court's finding that Heath was an organizer of the scheme. The PSR provided evidence that Heath obtained the credit card information used to manufacture the counterfeit credit cards, distributed the credit card information to other participants in the scheme, and taught other participants how to manufacture the counterfeit cards. According to the PSR, Puryear explained that Heath obtained the credit card information and would verify that the credit card account number was activated. ROA, Vol. 3 at 6. Puryear also explained that "Heath had taught [Kulp and Madden] how [to manufacture the counterfeit credit cards], and that [Heath] was the one who provided the credit card numbers to them." Id. According to the PSR, Madden confirmed that "[s]he and Kulp would obtain the numbers from Heath, and Kulp would manufacture the counterfeit credit cards." Id. at 7. Further, Kulp explained that Heath taught her how to manufacture the counterfeit credit cards and that "Heath would supply the numbers from the stolen credit card receipts he was getting from a hotel." Id. at 8.

The PSR also included evidence that Heath coordinated the rental of hotel rooms and recruited accomplices to meet in Durant. According to the PSR, Madden explained that "Heath called in a stolen credit card number to the Hampton Inn and rented two rooms" and that "Heath would tell them what name to use, and they would check into the rooms using those names." Id. at 7.

15

Further, according to the PSR, Speigle explained that "Heath called her while she was in Dallas, Texas, and asked her if she would pick up Daniel Jeffery and bring him to Durant, Oklahoma." Id. at 7–8. Heath did not object to these factual findings. Thus, based on this evidence, we conclude that the district court's finding that Heath was an organizer of this scheme did not constitute clear error and that the district court properly included the four-level enhancement.

## III. CONCLUSION

Heath's sentence is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge

16