RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0268p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 14-2085

*v.*

JIMMIE MOON,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:13-cr-00181—Paul Lewis Maloney, Chief District Judge.

Decided and Filed: November 4, 2015

Before: GIBBONS and McKEAGUE Circuit Judges; ANDERSON, District Judge.[*]

———————————

**COUNSEL**

**ON BRIEF:** Lawrence J. Phelan, HAEHNEL & PHELAN, Grand Rapids, Michigan, for Appellant. Hagen W. Frank, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

———————————

**OPINION**

———————————

S. THOMAS ANDERSON, District Judge. Jimmie Moon appeals the substantive reasonableness of his 96-month sentence for conspiracy to commit wire fraud. As part of his plea agreement, Moon admitted that he obtained scores of credit card and gift card numbers with

---

[*]The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

fraudulent intent, though only a fraction of them were usable. On appeal Moon argues that the district court should have calculated the loss resulting from his offense by including only actual losses from the usable numbers. The district court applied the guidelines and calculated the intended loss of the crime by assuming a $500 minimum loss for each stolen number. Moon contends that the district court's approach overstates the severity of his offense. Based on the clear language of the plea agreement, we hold that Moon waived his right to appeal. Even if he had not waived his right to appeal, we find that Moon's sentence was substantively reasonable. We **AFFIRM**.

**I.**

Beginning in April 2011, Moon and a co-conspirator conspired to obtain credit card numbers and gift cards for the purpose of making fraudulent purchases with the cards. According to the presentence report, Moon and his co-conspirator would acquire credit card numbers issued to third parties and then use the information to create counterfeit credit cards and stored-value cards (i.e. gift cards). Moon would then use the counterfeit cards to purchase merchandise and a high volume of other stored-value cards from merchants like Sam's Club and Meijer. A federal grand jury indicted Moon and his co-conspirator on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349; one count of access device fraud in violation of 18 U.S.C. § 1029; one count of aggravated identity theft in violation of 18 U.S.C. § 1028A; and forfeiture allegations.

On November 26, 2013, Moon entered into a plea agreement with the United States under which he agreed to change his plea to guilty as to the wire fraud count. In exchange for Moon's guilty plea to the wire fraud offense, the government agreed to move for the dismissal of the access device fraud and aggravated identity theft counts at sentencing. Moon also waived his right to appeal his conviction and a sentence "within the applicable guideline range, along with the manner in which the sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or any other grounds." Moon did retain the right to appeal "adverse rulings on any preserved objection asserting that the [district court] incorrectly determined the final Guideline range" as well as "a sentence that exceeds the statutory maximum or is based upon an unconstitutional

factor, such as race, religion, national origin or gender." The district court adopted the magistrate judge's recommendation to adopt the plea agreement.

The district court subsequently sentenced Moon to 96 months' imprisonment followed by 4 years supervised release. The court ordered Moon to pay a $100 special assessment and make restitution in the amount of $80,320.61. Moon's timely appeal followed.

**II.**

As an initial matter, the government argues that Moon waived his right to appeal his sentence. This court reviews the question of whether a defendant has waived the right to appeal a sentence *de novo*. *United States v. Pirosko*, 787 F.3d 358, 370 (6th Cir. 2015). "A defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Winans*, 748 F.3d 268, 270 (6th Cir. 2014) (quoting *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005)). The court construes plea agreements using general contract principles, including construing any ambiguities in an agreement against the government. *Id.*

We conclude that Moon waived his right to challenge the substantive reasonableness of his sentence as part of his plea agreement. Under the terms of the plea agreement, Moon waived his right to appeal a sentence "within the applicable guideline range, along with the manner in which the sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or any other grounds." Moon preserved his right to appeal only two specific issues related to his sentence: (1) "adverse rulings on any preserved objection asserting that the [district court] incorrectly determined the final Guideline range" and (2) "a sentence that exceeds the statutory maximum or is based upon an unconstitutional factor, such as race, religion, national origin or gender."

There is no dispute that Moon understood the appellate-waiver provision of the plea agreement and that Moon knowingly and intelligently waived his right to appeal. Moon simply argues that his motion for a downward variance at sentencing constituted a "preserved objection" to the district court's calculation of the final guidelines range. The government responds that Moon requested a downward variance from the final guidelines range at sentencing but without actually objecting to the district court's calculation of the guidelines range. Thus, Moon waived

his right to appeal the substantive reasonableness of his sentence and the district court's denial of his motion for variance. We find that the government has the better of this argument.

The record below shows that Moon moved for a downward variance but never preserved an objection to the district court's calculation of the final sentencing guidelines range. At sentencing, the district court found that the appropriate offense level was 26 and that Moon's criminal history category was V, yielding an advisory guidelines range of 110 to 137 months. (ECF 74, Sentencing Hr'g Tr., Page ID 396.) When the district court asked counsel for Moon whether he concurred with the court's calculations, counsel for Moon responded, "I do, your Honor." (*Id.* at 397.) Counsel's concession amounts to a failure to preserve an objection to the district court's calculation of the final guidelines range.

The remainder of the sentencing confirms that Moon was arguing for a downward variance from the guidelines range, not objecting to the district court's calculation of the final guidelines range. As counsel explained to the district court at sentencing, Moon "filed a motion for a variance for two reasons, one is the scoring for the total intended loss rather than the actual loss overstates the seriousness of the case." (ECF 74, Sentencing Tr. 7:14-17, Page ID 401.) Specifically, counsel argued that the district court should consider the fact that Moon would be subject to an 8-level increase in his offense level and a guidelines range of 77 to 96 months if the court counted only the actual loss ($87,345.71) caused by Moon's offenses. (*Id.* at 401-403.) Instead, the presumed intended loss ($238,690.95) based in part on a loss of $500 per device resulted in a 12-level increase in his offense level and a guidelines range of 110 to 137 months. (*Id.* at 402.) The sentencing transcript confirms that Moon's attorney asked the district court to vary downward based on an alternative calculation of the guidelines range but never objected to the district court's calculation of the final guidelines range.

It is also apparent that the district court understood Moon's argument to be a request for a variance and not an objection to the final guidelines range. A district court retains the discretion to "reject the Guidelines sentencing ranges based on articulated policy disagreements . . . ." *United States v. Kamper*, 748 F.3d 728, 741-42 (6th Cir. 2014); *United States v. Massey*, 663 F.3d 852, 861 (6th Cir. 2011). In denying the motion for the downward variance, the district court remarked that it had

no policy disagreement with the $500 per credit card calculation loss, it's basically a place holder, if you will, for cards that weren't used, the numbers. The Court's experience tells me that the numbers here, if stolen, have a very short life span in terms of them being able to be used because the credit card companies are getting more sophisticated in catching stolen numbers and misused numbers, but I have no policy disagreement with that notion of intended loss, so I'm not going to vary on that. And I don't think the loss as calculated in these guidelines overstates the significance of the criminality in this particular case.

(ECF 74, Sentencing Hr'g Tr., Page ID 418.)

The district court squarely addressed Moon's argument as a request for a variance and expressed that it had no policy disagreement with the intended loss calculation, obviously in recognition of its authority to grant a variance based on a policy disagreement with the guidelines. Therefore, there is no support for Moon's claim that his motion for variance was a preserved objection to the district court's calculation of the final guidelines range.

Having established that Moon sought a downward variance without objecting to the district court's calculation of the final guideline range, we hold that Moon waived his right to appeal the substantive reasonableness of his sentence. As part of the plea agreement, Moon reserved the limited right to appeal "adverse rulings on any preserved objection asserting that the [district court] incorrectly determined the final Guideline range." At least two other panels of this Court have held that substantially similar language in an appellate waiver did not preserve a defendant's right to appeal the denial of a motion for downward variance. *United States v. Jones*, --- F. App'x ---, No. 14-2265, 2015 WL 4746335, at *6 (6th Cir. Aug. 12, 2015) ("But neither of these exceptions [in the waiver] apply to Jones's argument that the district court erred in its treatment of Jones's motion for a downward variance."); *United States v. Vandewege*, 433 F. App'x 388, 390 (6th Cir. 2011) ("Because Vandewege challenges only the district court's denial of a variance from the guidelines range—and not the guidelines range itself—his appeal is waived."). Therefore, we conclude that Moon waived his right to bring this appeal.

**III.**

Even if Moon had not waived his right to appeal, we hold that his sentence was substantively reasonable. A sentence is substantively reasonable "if it is proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than

necessary, to comply with the purposes of § 3553(a)." *United States v. Robinson*, 778 F.3d 515, 519 (6th Cir. 2015) (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)). A sentence is substantively unreasonable "when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Fields*, 763 F.3d 443, 455 (6th Cir. 2014). A sentence within a correctly calculated guidelines range is entitled to a rebuttable presumption of reasonableness. *Id.* (citation omitted). Moreover, "[a]lthough it is not impossible to succeed on a substantive-reasonableness challenge to a below-guidelines sentence, defendants who seek to do so bear a heavy burden." *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013).

Moon has raised the amount of loss issue as a question of substantive reasonableness. As a general matter, this court reviews the reasonableness of a sentence for abuse of discretion. *Peugh v. United States*, 133 S. Ct. 2072, 2080 (2013); *United States v. Ushery*, 785 F.3d 210, 223 (6th Cir. 2015). "An abuse of discretion occurs when a ruling is based on an error of law or a clearly erroneous finding of fact, or when the reviewing court is otherwise left with the definite and firm conviction that the district court committed a clear error of judgment." *United States v. Kerley*, 784 F.3d 327, 347 (6th Cir. 2015) (quoting *United States v. Kumar*, 750 F.3d 563, 566 (6th Cir. 2014)).

Moon contests the reasonableness of the district court's application of U.S.S.G. § 2B1.1 in denying his motion for a downward variance. Section 2B1.1 governs the computation of a defendant's offense level for offenses involving stolen property, fraud, and deceit, among other crimes. Section 2B1.1(b)(1) increases the offense level as the amount of loss sustained as a result of the offense increases. The application notes for § 2B1.1(b)(1) specify that "loss is the greater of actual loss or intended loss" and define "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1(b)(1), cmt. n.3(A)(i). According to the application notes, "'[i]ntended loss' (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur . . . ." *Id.* Application note 3(F) creates "special rules," which apply notwithstanding the "general rules" set out in Note 3(A), to "assist in determining

loss" in specific cases. § 2B1.1(b)(1), cmt. n.3(F). In cases involving "[s]tolen or counterfeit credit cards and access devices," "loss includes any unauthorized charges made with the counterfeit access device or unauthorized access device and shall be not less than $500 per access device." § 2B1.1(b)(1), cmt. n.3(F)(1).

Moon argues that most of the credit card and gift card numbers he acquired were no longer usable and that he did not attempt to use all of them. As such, the presumption of $500 in losses for each access device he possessed overstates the seriousness of his offense, exaggerates the amount of loss caused by his offense, and improperly resulted in a four-level increase in his offense level. In *United States v. Gilmore*, 431 F. App'x 428 (6th Cir. 2011), another panel of this court considered much the same argument about the $500 per device loss calculation.[1] *Gilmore* began by noting that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Gilmore*, 431 F. App'x at 430 (quoting *Stinson v. United States,* 508 U.S. 36, 38 (1993) (other citation omitted)). The panel then proceeded to construe Application Note 3(F)(i) to create "two clear conditions: (1) loss shall include any unauthorized charges made with the counterfeit access device or unauthorized access device, and (2) the loss shall be not less than $500 per access device." *Id.* In other words, the Application Note "sets a floor for calculating the loss attributable to each device, namely $500; it does not limit loss calculations to devices actually used." *Id.* *Gilmore* went on to cite decisions from other circuits construing Application Note 3(F)(i) in the same way. *Id.* at 431.

We find *Gilmore* persuasive and therefore reject Moon's argument for a "usability" requirement. Although *Gilmore* is an unreported decision, other panels of this court have followed its interpretation of U.S.S.G. § 2B1.1(b) and Application Note 3(F)(i). *See United States v. Beuns*, 614 F. App'x 284, 287-88 (6th Cir. 2015); *United States v. Shifu Lin*, 508 F. App'x 398, 404 (6th Cir. 2012); *United States v. Lyles*, 506 F. App'x 440, 445 (6th Cir. 2012) ("This is what the Guidelines specify, and we follow it here in rejecting Lyles's argument.").

---

[1]It should be noted that Moon pleaded guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349; whereas, the defendant in *Gilmore* pleaded guilty to other offenses under other statutes involving identification documents and unauthorized access devices. Nevertheless, the *Gilmore* panel considered the same guideline, U.S.S.G. § 2B1.1(b), and the same application notes at issue in this appeal.

And a majority of the other Circuits to have considered the question of "usability" have reached the same result as *Gilmore*. *United States v. Moore*, 788 F.3d 693, 695 (7th Cir. 2015) ("We apply the plain text of § 2B1.1 cmmt. n.3(F)(i) and agree with the government that the $500 per unauthorized access device amount of loss attributed under this provision applies to all unauthorized access devices seized in a case."); *United States v. Cardenas*, 598 F. App'x 264, 267 (5th Cir. 2015) ("Cardenas's focus on the meaning of 'use' is misplaced; the $500 minimum applies even to unused devices."); *United States v. Balde*, --- F. App'x ---, No. 14-4135, 2015 WL 3776392, at *3 (4th Cir. June 18, 2015); *United States v. Bermudez,* 536 F. App'x 869, 871 (11th Cir. 2013); *United States v. Heath,* 424, F. App'x 730, 736-37 (10th Cir. 2011); *United States v. Volynskiy*, 431 F. App'x 8, 9-10 (2d Cir. 2011).[2]

Moon urges us to follow the approach adopted by the Ninth Circuit in *United States v. Onyesoh*, 674 F.3d 1157 (9th Cir. 2012) and assess loss by counting only actual loss suffered from usable access devices. The Ninth Circuit held that "unauthorized access devices must be usable" in order for the special rule of $500 per device in losses at Application Note 3(F)(i) to apply. *Onyesoh*, 674 F.3d at 1159. In *Onyesoh*, the defendant pleaded guilty to possession of stolen mail and possession of "unauthorized access devices with the intent to defraud," namely expired credit card numbers. *Id.* at 1158. The *Onyesoh* court began with the statutory definition of an "access device," which 18 U.S.C. § 1029(e)(1) defines as a card, code, account number, or other type of information that "can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value . . . ." *Id.* at 1159 (citing 18 U.S.C.§ 1029(e)(1). The court highlighted the statutory language that an "access device" must "be capable of obtaining something of value" and found from a brief survey of case law that "[n]o court, in this or any other circuit, has read usability out of the statute." *Id.* The Ninth Circuit concluded then that the government had to "show some usability of these expired numbers" before a sentencing court could include the numbers in the calculation of loss pursuant to U.S.S.G. § 2B1.1(b). *Id.* at 1159-60.

---

[2]A number of other Circuit decisions have applied the $500 per device rule without directly addressing a usability requirement. *E.g. United States v. Kowal*, 527 F.3d 741, 745 (8th Cir. 2008); *United States v. Alli*, 444 F.3d 34, 37-38 (1st Cir. 2006); *United States v. Little*, 308 F. App'x 633, 634-35 (3d Cir. 2009).

Another panel of this Court recently considered *Onyesoh*'s "usability" requirement and declined to follow the Ninth Circuit's approach. *United States v. Vysniauskas*, 593 F. App'x 518, 528-29 (6th Cir. 2015). The panel in *Vysniauskas* observed that the application notes for § 2B1.1 adopt certain definitions for "access devices" found in 18 U.S.C. § 1029(e)(3), specifically, where that code section defines "unauthorized access devices" to include access devices "lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." *Id.* at 528. The *Vysniauskas* panel reasoned that the statute and the guidelines contained no "usability" requirement and that any such rule "must be permissive enough to encompass the 'expired, revoked, and canceled' devices expressly" defined in 18 U.S.C. § 1029(e)(3). *Id.* The panel also noted that even an access device that is not "usable" to make fraudulent purchases may still have other illegal uses, for example, using information from the access device to create false identities. *Id.* Additionally, U.S.S.G. § 2B1.1(b)(1)'s Application Note 3(A)(i) specifies that "loss is the greater of actual loss or intended loss" and defines "intended loss" to include even "pecuniary harm that would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1(b)(1)'s cmt. n.3(A)(i). A "usability" requirement would arguably conflict with this expansive definition of "intended loss" and the fact that pecuniary harm might even be impossible but still countable as "intended loss." Therefore, we reject Moon's argument for reading a "usability" requirement into U.S.S.G. § 2B1.1(b).

This leaves Moon's argument that Application Note 3(F)(i) runs afoul of 18 U.S.C. § 3553(a) and its parsimony provision. Pursuant to 18 U.S.C. § 3553(a), a sentencing court must "impose a sentence sufficient, but not greater than necessary" to achieve certain objectives, in particular "the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant . . . ." 18 U.S.C. § 3553(a)(2). Another panel of this court has remarked that "[t]heoretically, the $500 fictional amount should have to pass muster under the parsimony provision of 18 U.S.C. § 3553(a)." *Lyles*, 506 F. App'x at 445. *Lyles* explained that "[a] rule requiring courts to automatically double a sentence based on a fictional loss multiplier is a rule that may well produce a sentence greater than necessary to achieve punishment's aims." *Id.* Ultimately, the *Lyles* panel did not reach the issue because the parties had not squarely presented it in that case.

Moon now contends that the district court failed to consider how the application of the $500 per device rule might run afoul of § 3553(a)'s mandate that a sentence must not be greater than necessary to achieve the objectives of the statute.

Moon's argument lacks merit. In its discussion of the § 3553 factors, the district court denied Moon's motion for a downward variance and specifically concluded that the calculated loss did not "overstate[] the significance of the criminality in this particular case." ECF 74, Sentencing Tr., Page ID 418. The district court observed that stolen credit card numbers "have a very short life span in terms of them being able to be used" because of the efforts of credit card companies to catch stolen and misused numbers faster. *Id.* Moon has not shown how the district court's consideration of the § 3553 factors was substantively unreasonable. The district court committed no error of law, arrived at no clearly erroneous finding of fact, and otherwise did not abuse its discretion. We conclude that Moon's sentence was substantively reasonable.

**IV.**

For all of these reasons, we affirm.