# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3717

_____

United States of America

*Plaintiff - Appellee*

v.

Stephen Thomas

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 23, 2016
Filed: November 10, 2016

_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Stephen Thomas pled guilty to conspiracy to possess fifteen or more counterfeit access devices and conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371, possession of fifteen or more counterfeit devices, in violation of 18 U.S.C. § 1029(a)(3), and false statements to a federal official, in violation of 18 U.S.C.

§ 1001(a)(2). The district court[1] sentenced Thomas to 80 months imprisonment, and he appeals. We affirm.

## I.

From 2014 to 2015, Thomas was a member of a group of four individuals who obtained gift cards and credit cards embossed with the names of three group members and encoded with stolen information. With the cards the group conducted fraudulent global cash access (GCA) transactions at casinos. In such transactions cash advances are obtained on credit cards at casino kiosks and the receipts are converted into cash by a casino cashier. The group also used such fraudulent cards at restaurants and retail stores. In November 2014, Thomas and Robert Foust traveled to the Ameristar Casino in Council Bluffs, Iowa. During that trip Foust fraudulently obtained $370 through a GCA transaction. Over the next three months the group was involved in over $28,000 of attempted or completed fraudulent transactions at four casinos and at a Walmart.

On February 16, 2015 a hotel employee in Bloomington, Minnesota notified law enforcement that there was a suspicious male, later identified as Thomas, using numerous prepaid credit cards to pay for his room. When Bloomington police officers made contact with Thomas, he provided them with a false name and driver license which prevented them from discovering his outstanding arrest warrant for a 2009 escape from federal prison. The officers were granted entry to Thomas' hotel room and searched his person but did not make any arrests. Officers later found 30 fraudulent cards in the hotel embossed with the names of the other three people in Thomas' group.

---

[1]The Honorable John A. Jarvey, Chief United States District Judge for the Southern District of Iowa.

-2-

Three days later law enforcement identified a suspicious piece of mail addressed to Foust at the Econo Lodge Inn and Suites in Des Moines, Iowa. When Foust was confronted, he gave the officers consent to search a package in which 50 fraudulent cards were discovered. Foust thereafter consented to a search of the room he had been sharing with four others, including Thomas. Law enforcement found 82 fraudulent cards in their hotel room and 18 fraudulent cards in a rental van that the group was using.

Thomas was indicted and later pled guilty to conspiracy to possess fifteen or more counterfeit access devices and conspiracy to commit mail fraud, possession of fifteen or more counterfeit devices, and false statements to a federal official. At sentencing the district court determined that his base offense level was 14 under USSG § 2B1.1 because the loss amount was over $95,000. Six levels were added because the offense involved ten or more victims, sophisticated means were used, and Thomas possessed five or more fraudulent forms of identification. See USSG §§ 2B1.1(b)(2)(A)(i), (b)(10)(c), (b)(11)(C)(ii). The court added four additional levels after finding under USSG § 3B1.1(a) that Thomas was "an organizer or leader of a criminal activity that involved five or more participants." Two more levels were added after finding that Thomas had willfully obstructed justice by providing false identification to the Bloomington police on February 16. See USSG § 3C1.1. A total offense level of 23 was reached after three levels for acceptance of responsibility were subtracted. See USSG § 3E1.1.

Thomas was assigned a criminal history category of four because his record included 1999 convictions for possession of a counterfeit credit card and unlawful possession of a controlled drug. Since he had been sentenced for those offenses in January 2000, the district court counted them because they had been imposed within fifteen years of the commencement of his current offense. See USSG § 4A1.2(e)(1). This produced a guideline range of 70 to 87 months, and the court sentenced him to 80 months. Thomas appeals.

## II.

Thomas first argues that the district court erred by increasing his base offense level by eight under USSG § 2B1.1 after finding that the total loss amount attributable to him exceeded $95,000. He and his codefendants had completed over $26,000 of fraudulent transactions and attempted to complete $2,000 more. Law enforcement found 180 unused fraudulent cards in the group's possession, and the district court attributed $500 to each of these unused cards. See USSG § 2B1.1 cmt. n.3(F)(i). The total loss amount exceeded $95,000. Thomas argues that the court erred by including amounts from unused cards possessed by the group.

We review de novo "a district court's interpretation and application of the sentencing guidelines" and its factual findings for clear error. United States v. Gallimore, 491 F.3d 871, 874–75 (8th Cir. 2007). The loss amount "is the greater of actual loss or intended loss," USSG § 2B1.1 cmt. n.3(A), and intended loss is the monetary "harm that the defendant purposely sought to inflict," including "harm that would have been impossible or unlikely to occur," id. cmt. n.3(A)(ii). The loss amount in "a case involving any counterfeit access device or unauthorized access device . . . includes any unauthorized charges made with the counterfeit access device or unauthorized access device and shall be not less than $500 per access device." Id. cmt. n.3(F)(i).

Our court has yet to decide whether the $500 minimum in USSG § 2B1.1 cmt. n.3(F)(i) may be applied to fraudulent cards which have been merely possessed rather than used. Following the plain language of this application note, we conclude that it may. The note itself allows a district court to impose the $500 minimum to "any counterfeit access device or unauthorized access device." Id. It does not require that the device actually have been used.

This conclusion is supported by the application note's next sentence which reads:

> However, if the unauthorized access device is a means of telecommunications access that identifies a specific telecommunications instrument or telecommunications account . . . , and that means was only possessed, and not used, during the commission of the offense, loss shall be not less than $100 per unused means.

Id. This sentence shows that "the authors of the Guidelines knew how to limit the application of these provisions to the use of access devices." United States v. Cardenas, 598 F. App'x 264, 267 (5th Cir. 2015). Moreover, the second sentence indicates that this application note "treats an unused means of telecommunications access as already within the category of devices to which this section applies." Id. If "any counterfeit access device or unauthorized access device" were intended to include only devices that had been actually used, there would have been no need to explain how to treat unused unauthorized access devices because such devices would have been "outside the ambit of the provision." Id. Every circuit to consider this issue has reached the same conclusion. See United States v. Moon, 808 F.3d 1085, 1091 (6th Cir. 2015) (collecting cases). The district court did not err when it concluded that a loss amount of $500 may be attributed to fraudulent cards that are unused.

Thomas also argues on appeal that the government was required to prove that each of his fraudulent cards was usable. Since Thomas failed to present this argument to the district court, we review it for plain error. United States v. Taylor, 679 F.3d 1005, 1007 (8th Cir. 2012). We reverse for plain error "only if there has been (1) an error, (2) that is plain, and (3) that affects substantial rights." United States v. Pledge, 821 F.3d 1035, 1037 (8th Cir. 2016) (quoting United States v. Richardson, 537 F.3d 951, 959 (8th Cir. 2008)). Here, the district court did not commit plain error because neither the Supreme Court nor our court has addressed whether USSG § 2B1.1 contains a usability requirement, and other circuit courts are divided on the issue. See

id.; compare Moon, 808 F.3d at 1092 ("[W]e reject Moon's argument for reading a 'usability' requirement into U.S.S.G. § 2B1.1(b)."), with United States v. Onyesoh, 674 F.3d 1157, 1160 (9th Cir. 2012) ("For an unauthorized access device whose usability is not readily apparent . . . some proof of usability is required when the defendant does not concede the fact or when the defendant challenges the enhancement.").

We conclude that the district court did not err by increasing Thomas' base offense level by eight under USSG § 2B1.1 after finding that the total loss amount for which he was responsible exceeded $95,000.

III.

Thomas next argues that the district court erred by increasing his base offense level by four for being an "organizer or leader of a criminal activity that involved five or more participants" under USSG § 3B1.1(a). Since this was a factual determination, we review for clear error. Gallimore, 491 F.3d at 874–75.

Thomas first argues that he was not an "organizer or leader" because he and his codefendants were equal partners in the fraudulent scheme. Under USSG § 3B1.1 cmt. n.4, a court should consider the following factors when determining whether a defendant was an "organizer or leader":

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

The district court did not clearly err on this issue because Thomas' conduct met almost every one of these factors. In Thomas' plea agreement he admitted that he had "directed others to use" the fraudulent credit cards and "arranged for" the delivery of several packages of fraudulent cards. He also admitted that his codefendants were to provide him with the illegal proceeds and he promised "them a percentage of the money obtained" in exchange. Moreover, every one of his codefendants indicated that Thomas had been the leader, that he had controlled the fraudulent cards, and that he had controlled the money obtained from the cards. Two of Thomas' codefendants additionally stated that he had recruited them into the scheme and that he had received the largest share of the illegal proceeds.

Thomas also argues that the criminal activity did not involve "five or more participants" because only four were listed in the indictment. See USSG § 3B1.1(a). A person qualifies as a "participant" if she is "criminally responsible for the commission of the offense," but a participant does not need to "have been convicted." Id. cmt. n.1. The offense here involved at least five participants because unindicted DeShawn Bowen could have been criminally responsible for conspiracy to possess more than fifteen fraudulent access devices. See 18 U.S.C. §§ 371, 1029(a)(3). Bowen traveled with the group, was listed as a driver of the minivan on the rental agreement, and recruited one of the codefendants into the scheme. Moreover, law enforcement officers found seven fraudulent cards when they searched her in Des Moines.

The district court thus did not clearly err when it increased Thomas' base offense level by four for being an "organizer or leader of a criminal activity that involved five or more participants" under USSG § 3B1.1(a).

Thomas also argues that the district court erred when it increased his base offense level by two for obstruction of justice. We accord "great deference to the sentencing court's decision to grant an enhancement for obstruction of justice." United States v. Calderon-Avila, 322 F.3d 505, 507 (8th Cir. 2003) (per curiam). Under USSG § 3C1.1(1), a district court may increase a defendant's base offense level by two if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." A defendant's conduct that occurs prior to the start of an official investigation fits within the enhancement "if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense." Id. cmt. n.1.

There is sufficient evidence to conclude that Thomas "consciously act[ed] with the purpose of obstructing justice." United States v. Watts, 940 F.2d 332, 332–33 (8th Cir. 1991) (quoting United States v. Stroud, 893 F.2d 504, 507 (2d Cir. 1990)). When police officers confronted Thomas in February 2015 in Bloomington, Minnesota, he provided them with both a false name and fake identification. Since Thomas had escaped from federal prison in 2009, he could have assumed that officers would have discovered an arrest warrant if he provided them with his real name. His actions were also "purposefully calculated, and likely, to thwart the investigation or prosecution of the offense," USSG § 3C1.1 cmt. n.1, and did in fact "significantly obstruct[] . . . the official investigation," id. § 3C1.1 cmt. n.4(G). Thomas' false name and identification allowed him to evade arrest for three days, during which time the group traveled from Minnesota to Iowa, used or attempted to use four fraudulent credit cards, and received a package containing fifty fraudulent cards. Law enforcement only found the group in Iowa after discovering a suspicious package addressed to Foust which a canine indicated contained narcotics. If Thomas had produced his correct identification in Minnesota, "the investigation and prosecution reasonably would have proceeded more

quickly and required less effort." See United States v. McKanry, 628 F.3d 1010, 1021 (8th Cir. 2011).

The district court thus did not err in finding that Thomas obstructed both his investigation and prosecution.

V.

Thomas finally argues that the district court erred when it assessed three criminal history points for his 1999 conviction for possession of a counterfeit credit card and unlawful possession of a controlled drug. We review criminal history calculations for clear error. United States v. Simms, 695 F.3d 863, 864 (8th Cir. 2012). When determining a defendant's criminal history category, a district court must count "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense." USSG § 4A1.2(e)(1).

Thomas argues that the district court should not have attributed three points to his 1999 conviction because his sentence had been imposed in January 2000 and his later fraudulent scheme did not begin until February 2015. The district court found, however, that this fraudulent scheme started in November 2014 when Foust traveled with Thomas to the Ameristar Casino in Council Bluffs, Iowa and fraudulently obtained $370 through a GCA transaction. Thomas argues that these reports by Foust to law enforcement should not have been credited because he had an incentive to cooperate and his "memory appears sketchy." Nevertheless, in both of Foust's statements he consistently described the November 2014 incident in Council Bluffs, which was also corroborated by video surveillance. The district court did not clearly err in assessing three criminal history points for Thomas' 1999 conviction.

## VI.

For these reasons we affirm Thomas' sentence.

_____